STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 FEB 16 P 4: 27

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-498

TDW - CUM - 2/16/05

ALC DEVELOPMENT CORP., et al,

    Plaintiffs

v.

ORDER

APR 20 2005

TOWN OF SCARBOROUGH,

    Defendant

Before the court is plaintiffs' motion for partial summary judgment on count II of their complaint.

Plaintiffs are the owners of several contiguous parcels of land located in Scarborough, Maine. Specifically, their combined properties are located south of Broadturn Road and immediately to the south and west of what is known as the Dunstan or Dunstan Corner area of Scarborough. The Dunstan area of Scarborough is centered at the intersections of Route 1, the Broadturn Road, and the Pine Point Road. The northern end of plaintiffs' land runs along the Broadturn Road west of the developed area of Dunstan Corner over to the Maine Turnpike. The southern end of plaintiffs' land runs between Route 1 and the Maine Turnpike.

Plaintiffs seek to develop their property into a mixed use village-style development which they contend is designed precisely in accordance with the development standards contemplated for the area around Dunstan in the Town's 1994 Comprehensive Plan. The current zoning regulations in that area of Scarborough preclude the kind of development which plaintiffs have proposed.

By way of background, in June 2003 plaintiffs entered into a Contract Zoning Agreement with the Scarborough Town Council that would have allowed them to build their planned development, which they have styled as "The Great American Neighborhood." [1] However, the contract zoning necessary for this development was thereafter challenged by referendum and repealed by a referendum vote on July 29, 2003. See Scarborough Zoning Ordinance (annexed as Exhibit B to the June 24, 2004 stipulation of the parties), Section XXIII, ¶6 page 135.

Plaintiffs thereafter commenced this action, challenging (in counts I, III through V, and VII of the complaint) the legality of the July 2003 referendum on state law grounds, alleging (in counts VI and VIII of the complaint) that the result of the referendum violated their constitutional rights under the due process and contract clauses, and seeking (in count IX of the complaint) an order requiring the Town to implement its comprehensive plan. The count that is specifically before the court on plaintiffs' motion for partial summary judgment is count II of the complaint, which seeks a declaration that because the Scarborough Zoning Ordinance as it applies to plaintiffs' property is not consistent with the Town's Comprehensive Plan, that zoning is no longer in effect pursuant to 30-A M.R.S.A. §4314(2) (Supp. 2004).

The motion for partial summary judgment thus turns on whether Scarborough's current zoning in the Dunstan area and with respect to plaintiffs' property in particular is consistent with the Town's Comprehensive Plan. See 30-A M.R.S.A. §§ 4314(2), 4352(2) (Supp. 2004). The Law Court has held, and the court does not understand the parties to disagree, that this is an issue of law. E.g., City of Old Town v. Dimoulas, 2002

---

[1] According to plaintiffs, the proposed development includes 397 residential units, with residential density as low as one unit per 5,000 square feet and with open space set asides providing an overall density of 3 units per acre, plus 50,000 square feet of commercial space.

ME 133 ¶18, 803 A.2d 1018, 1023. Moreover, the relevant facts (adoption of the Comprehensive Plain, text of the Comprehensive Plan, text of the Scarborough Zoning Ordinance, zoning actions by the Town after the adoption of the Comprehensive Plan) are not disputed. Although both side have offered affidavits from respected city and regional planners in support of their divergent positions (see Rickert Affidavit dated June 28, 2004; Ziepniewski Affidavit dated August 20, 2004; Eyerman Affidavit dated August 23, 2004; Rickert Rebuttal Affidavit dated August 31, 2004; DeWan Affidavit dated August 31, 2004), counsel for both sides acknowledged in a telephone conference on January 21, 2005 that the underlying facts are undisputed and that they could not see any circumstance where the court would have a trial on count II of the complaint. The issue therefore, is ripe for summary judgment.

1.    The 1994 Comprehensive Plan

Scarborough's Comprehensive Plan was adopted on July 20, 1994 and was amended in minor respects on June 20, 2001. At the time Scarborough's plan was adopted, the applicable state statutes required that the Town, as part of its local growth management program, have a comprehensive plan and an implementation program. See 30-A M.R.S.A. §4326 (1996).[2] Maine towns are not required to prepare comprehensive growth management plans. See 30-A M.R.S.A. §4323 (1996). However, municipalities that choose to engage in a growth management program must adopt both a comprehensive plan and an implementation strategy, and any municipality that enacts a zoning ordinance is required to have, as a prerequisite, a comprehensive plan.

---

[2] 30-A M.R.S.A. §4326 has been rewritten since 1994 but for purposes of this case, no material changes have been made in that section. Citations in this decision will therefore be to the current version of the statute, 30-A M.R.S.A. §4326 (Supp. 2004).

See Bragdon v. Town of Vassalboro, 2001 ME 137 ¶7, 780 A.2d 299, 301.

In compliance with § 4326(1), Scarborough's 1994 Comprehensive Plan included, in chapters 4-14, an inventory and analysis of the Towns relevant economic data, its natural resources, its transportation systems, its housing stock, its land use patterns, and an assessment of capital facilities and public services necessary to support growth and development. As required by § 4326(2), chapters 15 and 16 the Town's 1994 Comprehensive Plan outlined the policies that the Town would follow to promote various specified state goals and regional and local issues that the Town considered important. Section 4326(3-A)[3] sets out a number of specified guidelines for the development of those policies, including a requirement that each municipality, with certain exceptions not relevant here, shall identify and designate certain areas within the municipality as growth areas and other areas as rural areas.

Finally, as required by § 4326(3), chapter 17 of the Scarborough Comprehensive Plan set forth the Town's strategy for implementing the Plan, including a specific schedule of tasks to be undertaken in the short term (two years from July 1994), in the middle term (3 to 5 years), and in the long term (5 to 10 years).

Specifically relevant here is that with respect to the future pattern of land use, the 1994 Comprehensive Plan identified several specific state goals, including the encouragement of orderly growth and development while protecting the state's rural character and "preventing development sprawl." Comprehensive Plan at 15-15. This goal is derived directly from section 4312 of the State's Growth Management Act. 30-A M.R.S.A. § 4312(3)(A) (Supp. 2004). Among the "local goals" listed were to encourage the growth of town and neighborhood centers as viable areas that support a mix of

_____

[3] Formerly §4326(3)(A).

4

residential, commercial, and civic uses, and to promote a pattern of land use that respects the remaining working rural lands of the Town. Comprehensive Plan at 15-15.

In furtherance of those goals the Plan provided that the Town should identify in its "Future Land Use Map" (1) areas of the community that should be allowed to evolve as "village compacts" with a viable mix of residential, commercial and civic uses, (2) areas that should be principally "suburban residential", and (3) areas that should be kept rural. Id. The Plan went on to state that the designated village compacts should be in and around the historic centers of the town and should be configured to accept a significant share of the Town's projected residential and local commercial growth. Id. at 15-16.

All of the discussion in the Comprehensive Plan leads up to the Future Land Use Plan, discussed in Chapter 16 and illustrated in figure 16-1. Figure 16-1 shows Dunstan as a Village Compact area, surrounded on the north, east, and south by "rural no growth" and "rural limited growth" areas and on the west by a "suburban residential" area. The text of the Comprehensive Plan states that the Village Compacts "encompass Scarborough's two most urban villages: one at Oak Hill and one at Dunstan." Comprehensive Plan at 16-2. The Comprehensive Plan also expressly contemplates increased residential density in the Village Compact areas. See, e.g., Comprehensive Plan at 15-16, 15-17, 16-3 (discussion of density bonus for planned unit developments and removing zoning barriers to small-scale multifamily housing in village compact areas).

The Comprehensive Plan emphasizes that the Future Use Plan in figure 16-1 is not a zoning map, that the standards set forth in the description of the Future Use Plan are meant as guidelines, and that

> [t]hose rewriting the Town's land use ordinances in the future should have flexibility in arriving at final zoning boundaries and standards, provided that the spirit and intent of the designated land use areas are upheld.

Comprehensive Plan at 16-1 (emphasis added).

The implementation section of the Comprehensive Plan is very straightforward. The Plan notes that under Maine's growth management law, "the Town's zoning ordinance must be amended to be consistent with this Comprehensive Plan within 24 months after adoption of the Plan." Comprehensive Plan at 17-1. It thereafter states that the following activities were to be achieved within two years of adoption of the Comprehensive Plan: "Revise the zoning districts, the requirements for those districts, and the official zoning map per the Future Land Use Plan, which is considered a guideline and is described in Ch. 16." Id. at 17-2.

2.    Scarborough's Implementation of the Comprehensive Plan

Notwithstanding the Comprehensive Plan's requirement that Scarborough's zoning districts and zoning map be revised within two years to be consistent with the Comprehensive Plan, Town Planner Ziepniewski admitted at his deposition in March 2004 that the zoning districts were never revised in that manner. Plaintiff's Statement of Material Facts (SMF) filed July 2, 2004 ¶¶29-30; Ziepniewski Dep. 64-65. Since 1994 the Town has also not configured the areas designated as "Village Compact" in its Comprehensive Plan to accept a significant share of the Town's projected residential

6

and local commercial growth. Id.[4] In June 1995, because the Town had not yet revised its zoning districts in keeping with its Comprehensive Plan, the State Office of Community Development concluded that Scarborough's zoning ordinance was not consistent with the Town's Comprehensive Plan. See Plaintiffs' SMF ¶28. In the ensuing nine and a half years, the Town has not made any changes to its zoning districts that would alter the conclusion reached by the State in June 1995.

Indeed, in the course of its consideration of plaintiffs' contract zoning agreement (prior to the referendum) the Town acknowledged that plaintiffs' project "implements a major component of the Comprehensive Plan that previously had not been implemented." Plaintiffs' June 2, 2004 SMF ¶40; August 21, 2002 Legislative Findings ¶ C. Because the contract zoning agreement was thereafter invalidated by referendum, all but eight acres of the approximately 150 acres owned by plaintiffs remains zoned "Rural Residence and Farming (R-F)," a designation which prohibits commercial uses and multi-family structures and which generally sets forth a minimum lot size of 80,000 square feet and prohibits development with a residential density of more than one unit for every two acres. See Plaintiffs' SMF 4, 32, 33; Defendant's SMF ¶¶4, 32, 33. The purpose of the R-F zone, according to Scarborough's ordinance, is to "conserve the integrity and natural qualities of rural open space." See Ordinance Section XIV, ¶ A page 98. This is the opposite of zoning designed to accept a significant share of the Town's projected residential growth. See Comprehensive Plan at 15-16.

---

[4] The Town argues that it has made zoning changes since the Comprehensive Plan — notably (1) the creation of a Haigis Parkway (HP) commercial district near a new Turnpike exit, (2) zoning to accommodate a 200 unit continuing care retirement community at a higher residential density than the zoning formerly allowed, and (3) the rezoning of 23 acres from R-F to R-2. See Defendant's SMF ¶29. Notably, however, the Town does not contend that those changes constitute the rezoning called for by the Comprehensive Plan of the areas designated as "Village Compact" on that plan.

<u>Applicable Law</u>

Any municipal zoning ordinance must be "pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body." 30-A M.R.S.A. § 4352(2) (Supp. 2004); <u>City of Old Town v. Dimoulas</u>, 2002 ME 133 ¶17, 803 A.2d at 1023. The burden is on the party challenging a zoning ordinance to prove that the ordinance is inconsistent with the comprehensive plan. <u>Id</u>. The ultimate question is whether the zoning ordinance can be found to be "in basic harmony" with the comprehensive plan. <u>Adelman v. Town of Baldwin</u>, 2000 ME 91 ¶22, 750 A.2d 577, 585. Finally, with certain exceptions not relevant here, any portion of a zoning ordinance that is not consistent with a Town's comprehensive plan "is no longer in effect 24 months after adoption of the plan." 30-A M.R.S.A. §4314(2) (Supp. 2004)

The court agrees with the Town that just because plaintiffs' Great American Neighborhood project has been found to be consistent with the Town's comprehensive plan but cannot be built under existing zoning, it does not necessarily follow that the Town's zoning ordinance is inconsistent with the comprehensive plan. The Comprehensive Plan's Future Land Use Plan is expressly only a guideline, and it would be possible to fashion a zoning ordinance that is consistent with the comprehensive plan but that does not accommodate plaintiffs' project.

However, in this instance the court has no alternative but to conclude that, at least where plaintiffs' property is concerned, Scarborough's zoning ordinance is not consistent with the 1994 Comprehensive Plan. Although the 1994 Comprehensive Plan expressly contemplated that within two years the Town would "revise the zoning districts, the requirements of those districts, and the official zoning map per the Future Land Use Plan" contained in the comprehensive plan, this was not done. Nor, for whatever reason, has this been done during the subsequent eight and a half years.

8

Moreover, the Comprehensive Plan itself has not been revised or altered but remains unchanged. To the extent that the Town's attitudes may have changed and its officials might wish to take the Town in a different direction, it would have been incumbent on the Town to amend its Comprehensive Plan.

Thus, although the Town contends that traffic problems in the Dunstan area constitute a valid reason to delay implementation of the Comprehensive Plan, the short answer to this contention is that, if newly arisen traffic problems require a different approach, the Town should have amended its comprehensive plan accordingly. Moreover, a review of the Comprehensive Plan demonstrates the traffic problems at Dunstan were in fact recognized and addressed in the plan and that those problems were no worse than those existing all along the Town's Route One Corridor. See, e.g., Comprehensive Plan at 12-2, 12-4, 12-20 through 12-22.

The Town contends that certain of the proposals relating to Dunstan in the Comprehensive Plan were recommendations for consideration rather than requirements for implementation. Specifically, the plan suggests that that Town should "consider" extending Town and Village Center (TVC) zoning in a wider area of Oak Hill and "perhaps" establish such a zone in Dunstan. Comprehensive Plan at 16-3. See id. at 15-16. While the specific use of Town and Village Center Zoning may be optional, the Comprehensive Plan's core proposal — that Dunstan be designated as Village Compact zone configured to accept a significant portion of the Town's future residential growth — is not optional but is instead a required element of the Comprehensive Plan

9

that has not been implemented.[5]

Thus, the court emphatically disagrees with the Town's suggestion, contained in the affidavits submitted by Ziepniewski and Eyerman, that leaving the existing R-F zoning in place in the Dunstan area is consistent with the comprehensive plan because the R-F zone constitutes a "de facto 'holding area'" that will allow the Town to reconsider the future development of the Dunstan area. Ziepniewski Affidavit ¶16, Eyerman Affidavit ¶18. If accepted, this suggestion would render the entire concept of a comprehensive plan meaningless. One could just as well argue that five or ten acre zoning would be consistent with the comprehensive plan because it would allow fewer units (and therefore greater future flexibility) in the "holding area". Under the Comprehensive Plan, Dunstan is not designated as a holding area but as a location where significant residential growth should occur. The Town's reliance on "de facto holding areas" merely serves to underline that the R-F zone is directly antithetical to the comprehensive plan's requirement that Dunstan be designated as a village compact area configured to accept increased density and a significant share of the Town's residential growth.

---

[5] Some of the language in the Comprehensive Plan speaks in terms of what the Town "should" do. See, e.g., Comprehensive Plan at 15-15 ("The Town should identify on its Future Land Use Map ... areas of the community that should be allowed to evolve as 'village compacts' with a viable mix of residential, commercial, and civil uses ... "). To the extent that it might be suggested that the use of such language denotes recommendations rather than requirements, see Adelman v. Town of Baldwin, 2000 ME 91 ¶23, 750 A.2d at 585, there are two answers. The first is that in the comprehensive plan all of the discussion up through Chapter 15 is phrased in terms of contemplated future action. In the later sections of the plan which actually designate a Future Land Use Plan and discuss its implementation, the language of the plan is no longer precatory. The second answer is that if the use of "should" in earlier sections of the plan were interpreted to make the plan permissive rather than mandatory, the entire plan would thereby be rendered toothless — notwithstanding the legislature's evident intention that comprehensive plans be binding and enforceable. See 30-A M.R.S.A. §4314(2) (any portion of a zoning ordinance that is not consistent with a comprehensive plan "is no longer in effect").

## Relief

For the reasons stated, plaintiffs are entitled to partial summary judgment consisting of a judgment declaring that, as it relates to their property, the Scarborough zoning ordinance is not consistent with the comprehensive plan. This conclusion relates to the portion of plaintiffs' property that is located in the R-F zone, not necessarily to the eight acres that are contained in the B-2 zone. Notwithstanding the legislative negation of any zoning that is inconsistent with a comprehensive plan, see §4314(2), the court will give the parties an opportunity to be heard before it takes the next step and declares the current zoning to be non-existent.

The entry shall be:

Plaintiffs' motion for summary judgment on count II of the complaint is granted and the existing R-F zoning applicable to plaintiffs' land is declared to be inconsistent with the Town's 1994 Comprehensive Plan. Before the court issues any further or additional relief with respect to count II, the parties shall be afforded an opportunity to be heard, and the clerk shall invite the parties to a conference to set the schedule for future proceedings. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 15, 2005

Thomas D. Warren
Justice, Superior Court

11

F COURTS
nd County
ox 287
ne 04112-0287

CHRISTOPHER VANIOTIS ESQ
PO BOX 9729
PORTLND ME 04104

F COURTS
ind County
ox 287
ne 04112-0287

TIMOTHY NORTON ESQ
PO BOX 597
PORTLAND ME 04112