STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-08-17


CONCERNED CITIZENS OF
GORHAM INC., et al.,

        Plaintiffs,

   v.                                                          ORDER

TOWN OF GORHAM, et al.,

        Defendants.


This is an appeal by four Gorham residents and a non-profit citizens group from a decision of the Gorham Planning Board approving an application by defendant Shaw Brothers Construction Inc. for the development of a quarry property located on Mosher Road in Gorham. Before the court is plaintiffs' motion for a trial of the facts pursuant to Rule 80B(d).

Despite the requirements of Rule 80B(e), plaintiffs have not filed the record with their motion for a trial of the facts, nor have they requested an extension of time in which to do so. For that reason alone, their motion can be denied. In the alternative, however, based on the offer of proof plaintiffs have submitted, the court agrees with defendants that – with one possible exception – the *Baker's Table Inc. v. City of Portland,* 2000 ME 7 ¶ 9, 743 A.2d 237, 240-41. Rule 80B(d) does not apply to any independent claims that are raised in the complaint. *Id.* Rule 80B(d) is not designed to allow a party to retry the facts that were before the Planning Board or to offer evidence that could have been offered at the administrative level.

In this case plaintiffs are seeking a trial of the facts to offer (1) testimony from participants in the drafting and promulgation of Gorham's comprehensive plan; (2)

testimony by a licensed geologist who testified before the Planning Board as to the relationship of DEP requirements to the Town's performance standards and as to the ability of the Planning Board to waive performance standards; and (3) testimony from DEP officials to describe the State regulatory scheme.

The first of those categories, testimony from participants in the drafting of the Gorham Comprehensive Plan, looks to be in the nature of legislative history. First, such legislative history could only be considered if the comprehensive plan were found to be ambiguous. Second, legislative history has to be contemporaneous – not after the fact statements as to the drafters' intent.

With respect to the second and third categories of the evidence plaintiffs seek to offer, it appears that plaintiffs are either seeking to re-litigate issues that were heard before the Planning Board or are attempting to offer expert testimony that should have been offered before the Planning Board.[1]

Accordingly, plaintiffs' motion for a trial of the facts is denied with one exception. The exception concerns plaintiffs' claim that the quarry approval violates Gorham's Comprehensive Plan. Counsel for the Town has indicated that it would not oppose the addition of the Town's Comprehensive Plan to the record, and it is not clear whether the Comprehensive Plan issue was raised below. It is also not clear to the court whether a claim that a zoning approval violates a town's comprehensive plan is an issue that has to be the subject of an 80B appeal or whether it can constitute an independent claim. In any event, the court believes that the Comprehensive Plan must be made part of the record.

The entry shall be:

---

[1] If, as plaintiffs apparently contend, it was improper for the Planning Board to assume that certain issues would be addressed by the applicable DEP requirements, plaintiffs have not demonstrated why they did not have an opportunity to make a record on that issue below.

Plaintiffs' motion for a trial of facts pursuant to Rule 80B(d) is denied except that Gorham's Comprehensive Plan, a copy of which is attached to plaintiffs' motion, shall be made part of the record. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:      September 2, 2008

Thomas D. Warren
Justice, Superior Court

ɔx 287
ɪe 04112-0287

.

HELEN EDMONDS ESQ
77 WINTHROP STREET
AUGUSTA ME 04330

*Shaw Bros*

COURTS
:d County
ɪx 287
ɘ 04112-0287

NATALIE BURNS ESQ
PO BOX 4510
PORTLAND ME 04112

*Town of Gorham Pl. Board /Town of Gorham*

COURTS
ɪd County
ɔx 287
ɪe 04112-0287

JAMES CLOUTIER ESQ
465 CONGRESS STREET
PORTLAND ME 04101-3528

*plaintiffs*

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-08-17
J. — Cum. 4/16

CONCERNED CITIZENS OF
GORHAM INC., et al,

APR 16

Plaintiffs,

v.

ORDER

TOWN OF GORHAM, et al.,

Defendants.

Before the court is an 80B appeal brought by Concerned Citizens of Gorham Inc. and four individual citizens whose property abuts the site of a quarry proposed by Shaw Brothers Construction Inc. on property located at Route 237 in Gorham. The plaintiffs (collectively, "CCOG") are appealing a permit granted by the Gorham Planning Board for the quarry.

1.    Procedural History

In December 2006 Shaw Brothers submitted an application to permit operation of a brickyard quarry and asphalt plant. On March 31, 2008, after several revisions and numerous planning board meetings, the planning board issued a decision document with conditions, R. 844-51, and a second document entitled "findings of fact, conclusions, and conditions of approval," R. 852-70, approving the application. CCOG timely appealed that decision on April 30, 2008.

After litigation on the question of whether CCOG would be entitled to a trial of the facts pursuant to Rule 80B(d), see Order dated September 2, 2008, the parties briefed the appeal. At this time only two issues are being pursued: (1) whether the Shaw Brothers'

application adequately addressed the hydrogeological requirements for a quarry in the Gorham Land Use and Development Code and (2) whether the placement of the quarry in an industrial zone is consistent with Gorham's Comprehensive Plan. CCOG has withdrawn count III of its complaint. [1]

This case was fully briefed on December 3, 2008 but the court has not had any time scheduled for civil cases since that date. Because, at this time, it is uncertain when the court will be able to schedule argument on this appeal, it is deciding the appeal on the briefs. *See Lindemann v. Commission on Governmental Ethics*, 2008 ME 187 ¶ 26, 961 A.2d 538, 546.

## 2.    Standard of Review

Ordinarily the court reviews the decision of a municipal planning board for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53 ¶ 6, 769 A.2d 172, 175. Interpretation of the language of a local ordinance is a question of law that is reviewed *de novo*. *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3, 836 A.2d 1285, 1287. In contrast, factual determinations made by a local planning board will only be overturned if they are not adequately supported by evidence in the record. *Jordan v. City of Ellsworth*, 2003 ME 82 ¶ 8, 828 A.2d 768, 771. On factual issues the court may not substitute its judgment for that of a local planning board. Just because a different conclusion could be drawn from the record does not justify overturning a planning board's decision if there is evidence in the record that could support the board's determination. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995).

---

[1] The Planning Board also approved the asphalt plant, and that aspect of its decision is not being appealed.

2

3.    Hydrogeological Issues

Chapter II, Section I.C of the Gorham Land Use and Development Code addresses new and existing sand and gravel and other quarrying operations and includes such quarrying operations, including the removal, processing and storage of topsoil or loam, rock, sand, gravel and other earth materials, within the term "gravel pit." Land Use and Development Code, Chapter II, Section I.C(1) at p. 98.[2]

Section I.C of the Code applies to both new and existing gravel pits. With respect to new gravel pits, the Code provides as follows:

4)    Application for New Pit Operations

a)    Permit Application Requirements. No new gravel pit . . . may commence operations without first applying to the Planning Board for a new pit operations permit. The following shall be submitted with the permit application:

*    *    *    *    *    *    *    *    *

(3)    a site plan . . . showing . . . the type and location of all existing surface and ground water, including location of existing wells and streams, drainage ways, . and depth to ground water at the site of the proposed excavation as determined by test borings and other geotechnical methods; . . . .

*    *    *    *    *    *    *    *    *

(10)    for new pits of five (5) acres or more, the following additional submissions are required:

a)    A hydro geological study which shows the depth of ground water throughout the site and establishes that the gravel pit operation will not cause any pollution to ground water and/or surface water.

---

[2] Page references to the Land and Development Code are the copy of the Code in Volume IA of the record on appeal, which is separately paginated.

\* \* \* \* \* \* \* \* \*

Chapter II, Section I.C.4.a(3), (10)(a), R. Vol. 1A at 103-104.

The Code also contains, in Section I.C.5, Operational Requirements for new and existing gravel pits, including the following:

> b) Excavation shall not extend below an elevation five (5) feet from the seasonal high water table as established by competent, technical data. A variance from this requirement shall be allowed pursuant to paragraph 490-E, Variance, Performance Standards for Excavation for Borrow, Clay, Topsoil, or Silt, 38 M.R.S.A. Sec 490-A-390-M and Article 8, Performance Standards for Quarries, 38 M.R.S.A. Sec 390-W to 490-EE. The request for variance shall consist of a hydro geologic study and supporting documentation required by the Department of Environmental Protection. The variance shall be reviewed and approved by the Department of Environmental Protection. Planning Board approval shall be conditioned on Department of Environmental Protection approval. . . .

Chapter II, Section I.C.5.6, R. Vol. 1A at 106.

Under the Code, the Planning Board is required to review any gravel pit application according to the special exception approval standards of Chapter I, Section IV(E) and the site plan approval standards of Chapter IV, Section IX (B, C, D, F, J, M, and P) and Chapter II, Section I.C.4.b(1), R. Vol. 1A at 104. Of these standards, the only one directly relevant to hydro-geological issues is contained in Chapter I, Section IV.E.2:

> The proposed use will not cause water pollution, sedimentation, erosion, contaminate any water supply nor reduce the capacity of the land to hold water so that a dangerous or unhealthy condition results.

R. Vol. 1A at 18.[3]

The brickyard quarry application envisioned that the quarry project would be developed in three phases. Phase I contemplated the excavation to approximately a

---

[3] The site plan approval standards in Chapter IV, Section IX are found at R. Tab 3 at 193-96. They do not address hydrogeological criteria except with respect to storm water.

100-foot depth. Phase II contemplated deeper excavation within the Phase I area and to a depth below the seasonal high water table and accordingly required not just the approval of the Town Planning Board but a variance from the DEP pursuant to Section I.C.5(b). Phase III contemplated excavation in an area east of the Phase I excavation.

The issue raised by CCOG is whether the requirements in Chapter II, Section I.C.4(3) and (10)(a) that an applicant for a new gravel pit permit submit a site plan showing the type and location of existing ground water, including "depth to ground water at the site of the proposed excavation" and a "hydrogeological study which shows the depth of ground water throughout the site and establishes that the gravel pit operation will not cause any pollution to ground water and/or surface water" were met in this case.[4]

In Shaw Brothers' application, site plans were submitted and are contained in a separate portion of the record. Those site plans do not, however, show "the depth to ground water at the site of the proposed excavation as determined by test borings and other geotechnical methods." Section I.C.4(a)(3). Moreover, with respect to a hydrogeological study, the Shaw Brothers' application states as follows:

C.4(A)(10)(a): Hydrogeological Study: It is the intent of the applicant to provide a complete hydrogeological assessment prior to the start of excavation for Phase 2. The applicant will submit the initial Notice of Intent to Comply and the Variance Application to MDEP for Phase 1. During the operation of Phase 1, a complete hydrogeological assessment of the site will be performed. The applicant intends to submit a second variance request to MDEP in association with Phase 2 to allow for excavation beneath the water table requiring the hydrogeological assessment. The applicant requests site plan approval from the Town for all three phases of the operation, however, with the stipulation that prior to the start of operation

---

[4] There is no dispute that the brickyard quarry involved more than 5 acres, thereby triggering Section I.C.4(10).

> within Phase 2 that the hydrogeological assessment and all other pertinent submission materials to MDEP be provided to staff and that MDEP approve the proposal.

R. Tab 5 at 223.

At a later point in the process, Shaw Brothers submitted a letter from MAI Environmental stating that MAI "has performed the necessary hydrogeological study to obtain the local permits for Phases I and III of the brickyard quarry." R. Tab 7 at 559-60. No actual study was submitted. Moreover, the information reported in the MAI letter was that two bedrock wells were installed and that there were no reported water-bearing bedrock fractures reported until 45 feet below mean sea level. The record demonstrates, however, that depth to ground water is not the same as depth to water bearing fractures. See Supp. Record at 6-7. The record reflects that MAI told the Board that ground water at the two wells that had been drilled was found at 94.01 feet above sea level and 102.3 feet above sea level. Supp. Record 6. Thus the MAI letter does not constitute a report showing the depth to ground water throughout the site, as required by Chapter II, Section I.C.4a(10)(a), R. Vol. 1A at 104.

The MAI letter goes on to reiterate that an in-depth hydrogeological study is contemplated as part of Phase II. R. Tab 7 at 559\. It is therefore apparent that Shaw Brothers and the Town expected that the hydrogeological study would be performed during the course of the quarrying operation. This may make sense and may satisfy the DEP with respect to the variance to be sought from the DEP for Phase II of the project. However, it is not what the Land Use Code requires.

The Code requires that a hydrogeological study be submitted as part of the application. Chapter II, Section I.C.4.a(10)(a). It also requires that the site plan

6

submitted show the depth of ground water at the site of the proposed excavation. Section I.C.4.a(3).

To the extent that the Planning Board interpreted the Land Use Code to allow the hydrogeological study to be performed after approval, the Planning Board's interpretation of the Land Use Code is not entitled to deference. *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3 and n. 4, 836 A.2d at 1287 and n. 4. Moreover, there is potentially a significant difference because a study submitted with the application is available to be considered on the question of whether the application will be approved at all. Once approval has been granted, ongoing studies may influence what measures need to be taken during the implementation and remediation process but cannot rescind the original approval.

Notably, the minutes of the May 22, 2007 Planning Board meeting reflect that counsel for the Town advised the Board that it was her opinion that an applicant had to submit a hydrogeological study under Chapter II, Section I.C.4a(10)(a) regardless of whether the applicant was also submitting hydrogeological information in seeking a variance under Section I.C.5.b. R. Tab 5 at 385. The court agrees.

On this issue, therefore, the court concludes that the Planning Board incorrectly determined that Shaw Brothers had satisfied the hydrogeological conditions.[5] CCOG also contends that the Shaw Brothers' application did not adequately address surface water pollution. The court has reviewed the relevant materials in the record and disagrees with CCOG on this issue.

---

[5] While the actions of the Gorham Planning Board will be vacated for failure to meet the hydrogeological standards, this action is without prejudice to further proceedings to remedy the failings with respect to the site plan and hydrogeological study as set forth above. This does not mean that Shaw Brothers is required to resubmit its entire application.

4. Consistency with Comprehensive Plan

This issue requires only brief consideration. The area where Shaw Brothers proposes to conduct quarrying operations is in Gorham's Industrial District. "Mineral extraction" is a permitted use in the Industrial District. Land Use Code, Chapter I, Section IX.B.9 (R. Tab 2 at 144).

CCOG argues that Gorham's Comprehensive Plan contemplates "production-distribution areas" that generally correspond with the Industrial Zone in Gorham's Zoning Code. The Comprehensive Plan does not mention "resource extraction" in the context of production-distribution areas but only in the context of the areas it has designated as "rural." *See* R. Tab 2 at 69. Accordingly, CCOG argues, location of a quarry or gravel pit in an industrial zone is not consistent with the Comprehensive Plan.

Defendants contend that this argument fails both because CCOG's claim is barred by the statute of limitations and because it fails on the merits. On the statute of limitations issue, defendants cite *Bog Lake Co. v. Town of Northfield*, 2008 ME 37 ¶¶ 8-9, 942 A.2d 700, 703-04, where the Law Court rejected as untimely a landowner's application for a declaratory judgment that its land did not meet the criteria for inclusion within the strict resource protection area established under the town's shoreland zoning ordinance.

In this case, the record appears to establish that the Comprehensive Plan was adopted in May 1993 and amended in August 1994, that the Land Use Code was effective in August 1972, and that the authority to engage in mineral extraction was contained in the initial definition of Industrial Zone and has not been amended. *See* R.

8

Tab 1 at 1; R. Vol. 1A at page 1; R. Tab 2 at 144.[6] If CCOG was required to challenge the inclusion of mineral extraction activities in the Industrial Zone as inconsistent with the Comprehensive Plan within 6 years of the adoption of the Comprehensive Plan, its complaint is untimely under 14 M.R.S. § 752.

The court has some doubt that the six-year statute of limitations applies in this situation. First, comprehensive plans – even when they mandate action – do not do so instantaneously. As a result, it is difficult to set the date of the adoption of a comprehensive plan as the date on which a cause of action would accrue. Second, the *Bog Lake* case applied a statute of limitations to the landowner. In contrast, the CCOG plaintiffs are abutters, and it would be unreasonable to require abutters to have to research and litigate all potential uses of neighboring properties at the time a comprehensive plan is adopted or lose their right to do so.

Finally, *Bog Lake* found the challenge in that case to be barred "absent a challenge to the ordinance itself." 2008 ME 37 ¶ 9, 942 A.2d at 704. Whatever the purpose of that exception, this case appears to involve a challenge to the ordinance itself. In the end, however, the court does not have to decide this case based on the statute of limitations because CCOG's argument fails on the merits.

First, CCOG's argument depends on the premise that the drafters of the Comprehensive Plan envisioned a strict correlation between the categories in the plan and the zoning districts. The problem with this is that the Comprehensive Plan discusses eight "areas," but the zoning ordinance contains 12 "districts." Moreover, the comprehensive plan does not contain any directive or statement of intention that the designated areas in the Comprehensive Plan should correlate with zoning districts. As

---

[6] In the Land Use Code, amendments are footnoted with the date of each amendment and there has been no amendment to Ch. 1, Section XII.B.9.

9

a result, the court cannot discern any legally enforceable prohibition against resource extraction activities being permitted in more than one zoning district.

Second, the Gorham Comprehensive Plan states that it is intended to be a "guide for managing change" and specifically states that it "is not a zoning ordinance, nor is it law of any kind." R. Tab 1 at 7. While it contains a section addressing the implementation of the plan, the plan does not contain language that can be construed as prohibiting resource extraction or quarrying in industrial districts. Nor does it contain language directing the Town to implement such a prohibition in the future.

In sum, just as in *City of Old Town v. Dimoulas*, 2002 ME 133 ¶¶ 18-19, 803 A.2d 1018, 1023, CCOG has failed to meet the burden of proving that the inclusion of mineral extraction in an industrial district is not "in harmony with" the Comprehensive Plan. Just because there is nothing in the Comprehensive Plan that affirmatively permits quarrying in an industrial district does not mean that quarrying is prohibited. *Id.* ¶ 19, 803 A.2d at 1023.

The entry shall be:

On count I of the complaint, the Gorham Planning Board's approval of the application by Shaw Brothers Construction to operate a gravel pit on Route 237 is vacated for the reasons set forth above. Judgment shall be entered for defendants on count II of the complaint dismissing the claim by plaintiff that mineral extraction in an industrial zone is inconsistent with Gorham's Comprehensive Plan.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:  April _16_, 2009

Thomas D. Warren
Justice, Superior Court

10

Date Filed __4-30-08__ Cumberland Docket No. __AP08-17__

County

Action __80B APPEAL__

CONCERNED CITIZENS OF GORHAM INC.
THERESA DOLAN
ANNE HAYES
RUSSELL SPRAGUE
JENNIFER EVERETT

INH. OF THE TOWN OF GORHAM, MAINE
THE PLANNING BOARD OF THE TOWN OF GORHAM
SHAW BROTHERS CONSTRUCTION

vs.

**Plaintiff's Attorney**

JAMES CLOUTIER ESQ
465 CONGRESS STREET #800
PORTLAND ME 04101   775-1515

**Defendant's Attorney**
Helen Edmonds, Esq. (Shaw Bros. Cons)
77 Winthrop Street Augusta ME 04330

William Dale & Natalie Burns Esqs for
Town of Gorham and Planning Board

Date of
Entry