Claude DUBOIS, et al.

v.

CITY OF SACO.

Supreme Judicial Court of Maine.

Argued June 24, 1994.
Decided Aug. 10, 1994.

Daniel L. Cummings (orally), Norman, Hanson & DeTroy, Portland, for plaintiffs.

James P. Boone (orally), Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Claude and Claire Dubois appeal from a summary judgment entered in the Superior Court (York County, *Brennan, J.*) on their action against the City of Saco following the City's foreclosure of a tax lien on real property owned by them located on Buxton Road. The Duboises contend that the trial court erred in determining that the penalty imposed by the City pursuant to the Tree Growth Tax Law, 36 M.R.S.A. §§ 571 to 584-A (1990 & Supp.1993), became a tax lien on their property and that they were precluded from challenging the propriety of the City's decision to remove the property from the tax status afforded timberland as provided by the tree growth statute. We affirm the judgment.

Pursuant to the authority specifically granted by the 1970 amendment to Article IX, Section 8 of the Maine Constitution,[1] the Legislature in 1970 enacted the Tree Growth Tax Law, providing for the assessment of property taxes on timberlands according to their wood production rather than their fair market value. The statute also provided for the methodology to be used by the state tax assessor to determine the average annual net production rates for various types of forest lands. *Id.* § 576. The statute authorized a municipal assessor to withdraw property from the "tree growth" classification when it was no longer eligible and mandated the imposition of a penalty, in accordance with a stated formula, "as an additional property tax upon withdrawal." *Id.* § 581.[2]

In the present proceeding, the record developed before the trial court reflects that for tax years 1979 through 1988, the City of Saco assessed the Duboises' property as timberland pursuant to the Tree Growth Tax Law. By a letter dated January 30, 1989, the City's tax assessor notified the Duboises that he had determined the land was no longer being used as timberland and, accordingly, was withdrawing the property from that classification and imposing a penalty of $12,900.[3] A supplemental tax bill in that amount for the year 1989 was sent to the Duboises. When the Duboises failed to pay the 1989 taxes, the tax collector followed the required statutory procedures to enforce the tax lien, and the Duboises were duly notified on May 20, 1993, of the impending automatic foreclosure of the tax lien mortgage. Prior to that date, the

1. Article IX, section 8, subsection 2, provides in relevant part:

> The Legislature shall have power to provide for the assessment of the following types of real estate wherever situated in accordance with a valuation based upon the current use thereof and in accordance with such conditions as the Legislature may enact:
>
> A. ... timberlands and woodlands; ...
>
> [T]he Legislature shall provide that any change of use higher than [use as timberlands and woodlands], except when the change is occasioned by a transfer resulting from the exercise of eminent domain, shall result in the imposition of a minimum penalty equal to the tax which would have been imposed over the 5 years preceding that change of use had the real estate been assessed at its highest and best use, less all taxes paid on that real estate over the preceding 5 years, and interest, upon such reasonable and equitable basis as the Legislature shall determine.

2. Section 581 provides that the withdrawal penalty be

> the greater of (a) an amount equal to the taxes which would have been assessed on the first day of April for the 5 tax years, or any lesser number of tax years starting with the year in which the property was first classified, preceding such withdrawal had such real estate been assessed in each of those years at its fair market value on the date of withdrawal less all taxes paid on that real estate over the preceding 5 years, and interest at the legal rate from the date or dates on which those amounts would have been payable or (b) an amount computed by multiplying the amount, if any, by which the fair market value of the real estate on the date of withdrawal exceeds the 100% valuation of the real estate pursuant to [the Tree Growth Tax Law] on the preceding April 1st, by the following rates: (i) If the real estate was subject to valuation under [the Tree Growth Tax Law] for 10 years or less prior to the date of withdrawal, the rate shall be 30%; and (ii) if the real estate was subject to valuation under [the Tree Growth Tax Law] for more than 10 years prior to the date of withdrawal, the rate shall be that percentage obtained by subtracting 1% from 30% for each full year beyond 10 years that the real estate was subject to valuation under [the Tree Growth Tax Law] prior to the date of withdrawal until a rate of 20% is reached. Fair market value at the time of withdrawal is the assessed value of comparable property in the municipality adjusted by the municipality's certified assessment ratio.

3. The Duboises do not challenge this figure.

Duboises paid the amount of the 1989 taxes, exclusive of the amount of the withdrawal penalty.

In June 1993, the Duboises filed the present complaint against the City challenging, *inter alia,* the authority of the City to impose the withdrawal penalty as a tax lien and its removal of the property from tree growth tax status and seeking to quiet title to the property. The City answered the complaint and brought a counterclaim seeking establishment and confirmation of its title to the property. Each of the parties filed a motion for a summary judgment. After a hearing on the motions, the court granted a summary judgment to the City on both the complaint and the counterclaim, and the Duboises appeal.

 In reviewing the grant of a motion for a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the trial court committed an error of law. *Casco Northern Bank, N.A. v. Edwards,* 640 A.2d 213, 215 (Me.1994).

## I.

The Duboises first contend that because the tree growth tax penalty was not an "assessed" tax, the trial court erred in finding that the City's tax lien was valid. We disagree. We have previously noted that "there must be strict compliance with statutory requirements to divest property owners of their titles for nonpayment of taxes." *Blaney v. Inhabitants of the Town of Shapleigh,* 455 A.2d 1381, 1387 (Me.1983). "Failure to follow strictly the statutorily delineated requirements will destroy the validity of the tax lien certificate and will prevent the [municipality] from acquiring title under the tax lien foreclosure procedures." *Id.; see also City of Augusta v. Allen,* 438 A.2d 472, 474 (Me.1981) (tax lien statutes to be strictly construed against the taxpaying authority); *Scavone v. Davis,* 142 Me. 45, 47, 45 A.2d 787

(1946) (tax liens may not be extended by implication or enlarged by judicial construction). The existence of a lien "to secure the payment of all taxes legally assessed on real estate" is established by 36 M.R.S.A. § 552 (1990). The statutes governing the tax lien foreclosure process make clear that foreclosure is only available for liens imposed pursuant to section 552. *See* 36 M.R.S.A. §§ 941, 942, 942–A (1990 & Supp.1993) (all referring to the lien "created by section 552"). Thus, as the Duboises contend, if the lien does not secure the payment of a tax "legally assessed" on real estate, it cannot form the basis of a tax lien foreclosure.

The Duboises point to 36 M.R.S.A. § 713 (1990), which authorizes a municipality to make "supplemental assessments" within three years of a regular property tax assessment "whenever it is determined that any estates liable to taxation have been omitted from assessment or any tax on estates is invalid or void by reason of illegality, error or irregularity in assessment." Section 713 provides that such supplemental assessments are enforceable by tax lien. The Duboises argue that a withdrawal penalty imposed pursuant to the Tree Growth Tax Law is not a supplemental assessment within the meaning of section 713 and, therefore, a withdrawal penalty cannot form the basis for a tax lien.

 There is a flaw in this argument. The applicable provisions of the Tree Growth Tax Law provide that when a withdrawal penalty is imposed "such penalties shall be paid to the tax collector *as additional property taxes* upon withdrawal." 36 M.R.S.A. § 581 (1990) (emphasis added). The language of section 581 makes clear that a withdrawal penalty is a tax that is "legally assessed" as that term is used in section 552 and may therefore become the basis of a tax lien.[4] Accordingly, the trial court correctly determined as a matter of law that the City could foreclose on a tax lien imposed to secure the Duboises' payment of the withdraw-

---

4. Effective in 1993, the Legislature amended the Tree Growth Tax Law to provide explicitly that withdrawal penalties are to be treated as supplemental tax assessments. *See* P.L.1993, ch. 452, §§ 5 & 6 (*codified as* 36 M.R.S.A. §§ 581 & 713–B (Supp.1993)). Because our determination of

the validity of the tax lien does not turn on section 713, we need not address the Duboises' contention that the 1993 enactment demonstrates that prior to 1993 the Legislature had not intended municipalities to enforce withdrawal penalties with tax liens.

al penalty assessed pursuant to the Tree Growth Tax Law.

## II.

 The Duboises next contend that the trial court erred in granting a summary judgment in favor of the City on their claim challenging the City's withdrawal of their property from tree growth tax status. We conclude that the Duboises' failure to pay the full amount of their taxes for 1989, as well as their failure to seek an abatement within a year of the assessment, precludes their challenge to the City's withdrawal decision.

Section 582–A of the Tree Growth Tax Law provides in pertinent part:

> Any person who ... seeks review of any matter arising under [the Tree Growth Tax Law] shall pay on or before the due date all taxes assessed on land subject to valuation under [the Tree Growth Tax Law], notwithstanding the pendency of a petition for ... review.

36 M.R.S.A. § 582–A (1990). Further, at the time the City imposed the withdrawal penalty on the Duboises, the statute governing abatements, 36 M.R.S.A. § 841 (1990), provided that a taxpayer desiring an abatement to correct an error or mistake in a property tax assessment must make such an application to the municipal assessors within one year from the commitment of the tax. *Id.* at subsection 1.[5] The Tree Growth Tax Law provides that tax assessments made pursuant thereto and denials of applications for tree growth tax status "are subject to the abatement procedures provided by section 841" with an appeal to the State Board of Property Tax Review. 36 M.R.S.A. § 583 (1990).

 Although section 583 does not explicitly state that the assessment of withdrawal penalties pursuant to the tree growth statute are subject to the abatement process, in construing a statute we "seek to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical." *State v. Fournier,* 617 A.2d 998, 999 (Me. 1992). Particularly in light of the Legisla-

ture's declaration that the Tree Growth Tax Law "shall be broadly construed to achieve its purpose," 36 M.R.S.A. § 584–A (1990), it would be illogical to conclude that the Legislature intended the abatement process to apply to both an assessment and the denial of requests for assessment pursuant to the Tree Growth Tax Law but not to a tax imposed as a result of the assessor's decision to withdraw property from the tree growth status.

Because the Duboises failed to avail themselves of the prescribed administrative processes for the relief they now seek, the trial court properly granted the City's motion for a summary judgment on this claim.

The entry is:

Judgment affirmed.

All concurring.

---

5. The Legislature has since shortened the period within which a taxpayer may seek an abatement to six months. *See* P.L.1991, ch. 16, § 1 (*codified as* 36 M.R.S.A. § 841(1) (Supp.1993)).