Salvatore VELLA and Trician
Marine Corporation, d/b/a
Camden Harbour Inn

v.

TOWN OF CAMDEN.

Supreme Judicial Court of Maine.

Argued Feb. 8, 1996.

Decided June 5, 1996.

**1052**

Edward F. Bradley (orally), Portland, for Plaintiffs.

Terry W. Calderwood (orally), Eaton, Peabody, Bradford & Veague, P.A., Camden, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Salvatore Vella and Trician Marine Corporation, doing business as Camden Harbour Inn, appeal from the summary judgment entered in the Superior Court (Knox County, Atwood, J.) in favor of the Town of Camden on their complaint against the Town seeking declaratory and injunctive relief. The plaintiffs contend, as they did before the trial court, that certain amendments to the Town's zoning ordinance are invalid because (1) they are inconsistent with the Town's comprehensive plan and constitute illegal spot zoning; (2) they violate the equal protection and due process clauses of the United States and Maine Constitutions; and (3) the Board of Selectmen violated the Freedom of Access Law and, based on improper motives, approved of and recommended that the proposed amendments be presented to the Town's voters. Alternatively they contend that because genuine issues of material fact were generated, the trial court erred in granting the Town's motion for a summary judgment. Finding no error in the record, we affirm the judgment.

The legislative body of the Town is the town meeting of its voters. On November 6, 1990, the Town enacted a comprehensive plan, effective November 3, 1992, that, *inter alia*, designates as a "growth area" the land use area referred to as the Traditional Village district, defined as follows:

> *Traditional Village:* the area that traditionally accommodated most of Camden's population and most of its social and commercial activity. It includes established neighborhoods at medium densities, the central business district, and a mix of compatible uses and activities within walking distance or a very short drive of most village residents. It is virtually all served by public water and sewer. To the extent that growth potential exists in the traditional village area, it will be in the form of limited infill development, limited conversions for affordable, "mother-in-law" apartments, and adaptive reuse of buildings. Design standards to assure compatibility with the scale and appearance of the village will be as important, perhaps more important, than prescribed densities.

Camden Comprehensive Plan, Part 3, ch. 17. Of the thirty-one lodging establishments in Camden, sixteen are located in the Traditional Village district.

On June 8, 1993, by secret ballot at a town meeting of the voters, two amendments to the Town's zoning ordinance were enacted pertaining to commercial lodging uses. One of the amendments expands the commercial uses in the Traditional Village district by permitting

> [h]otels or motels with more than ten (10) but fewer than fifteen (15) sleeping rooms on lots of 3.5 or more acres, provided that the sleeping rooms are in existence and used as such and are located wholly within one structure existing as of June 8, 1993, and further provided that any restaurant facilities located therein shall prepare food and serve meals only to overnight guests of that hotel or motel.

Zoning Ordinance of the Town of Camden, Maine, art. VIII, § 7(B)(25). The other amendment defines "hotel" or "motel" as follows:

> A commercial building or group of buildings built or converted to accommodate for a fee travelers and other transient guests, who are staying for a limited duration, with sleeping rooms (with or without cooking facilities). A hotel or motel may include restaurant facilities where food is prepared and meals are served *only* to its *overnight* guests.

*Id.* art. III, § 2 (The italicized words indicate amended language. The amendment deleted the words "and other customers" from the end of the second sentence.).

Since 1976, the plaintiffs, or their predecessors, have owned and operated the Camden Harbour Inn, a legally nonconforming lodging establishment with twenty-two rental rooms, a ninety-six seat restaurant and a bar, located in the Traditional Village district on approximately one acre of land. At the time of the enactment of the amendments, the Norumbega Inn, a lodging establishment located in the Traditional Village district on 3.95 acres of land, had no restaurant or bar and was authorized to rent seven rooms. In response to the Town's June 1, 1992 citation of the Norumbega Inn for its operation of thirteen, rather than seven, rental rooms, the Norumbega Inn instituted an action against the Town. On June 21, 1993, after the Town's enactment of the amendments legalized the Norumbega Inn's use, the Town's Board of Selectmen accepted the Norumbega Inn's payments of $1500 for the Norumbega Inn's past violations and $5000 for legal fees incurred by the Town, and the action between the parties was dismissed.

In July 1993, the plaintiffs filed the present multi-count complaint against the Town. After a hearing on the Town's motion to dismiss the complaint on the ground that it failed to state a claim on which relief could be granted, the trial court (*Brodrick, J.*) dismissed Count V of the complaint that alleged the Board of Selectmen lacked authority to settle the litigation between the Town and the Norumbega Inn.[1] Following a

hearing on the cross-motions for a summary judgment filed by the parties, the court granted the Town's motion on the remaining counts of the complaint. From the judgment entered accordingly, the plaintiffs appeal.

## I.

The plaintiffs first contend the amendments are inconsistent with Camden's comprehensive plan and constitute illegal spot zoning enacted solely for the benefit of the Norumbega Inn. We disagree. As required by 30–A M.R.S.A. § 4352(2) (Pamph. 1995), "[a] zoning ordinance must be pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body." The plaintiffs bear the burden of proving that the challenged amendments are inconsistent with the Town's comprehensive plan. *LaBonta v. City of Waterville*, 528 A.2d 1262, 1265 (Me.1987). In reviewing the record to determine whether, from the evidence before it, the legislative body of the Town could have determined that the amendments are in basic harmony with the comprehensive plan, we will not substitute our judgment for that of the legislative body. *Id.*

"Spot zoning" is a neutral term encompassing both legal and illegal land use controls. The fact that a zoning amendment benefits only a particular property or is adopted at the request of a particular property owner for that owner's benefit is not determinative of whether it is an illegal spot zoning. *See* Orlando E. Delogu, *Maine Land Use and Zoning Control* § 7.01 at 450 (1992) ("The fact that some [zoning] amendments treat with small areas or are suggested by a landowner-developer does not mean that the rezoning should not be adopted."); *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n*, 402 A.2d 36 (D.C.1979) (zoning amendment requested by commercial property owner not an illegal spot zoning despite its "affect[ing] a limited area to the advantage of [that] single owner"). *See also Rodgers v. Village of Tarrytown*, 302 N.Y. 115, 96 N.E.2d 731, 734 (1951) (defining illegal spot zoning as "the process of singling out a small parcel of land for a

---

1. The plaintiffs do not challenge the court's ruling on this count of their complaint.

use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners").

 The Town's comprehensive plan sets forth numerous land use goals and policies. One of its many goals is "[t]o manage population and household growth in Camden in a manner consistent with the Town's ability to absorb it, both environmentally and fiscally." Camden Comprehensive Plan, Part 3, ch. 16(A). Pursuant to this goal, it is the stated policy "neither to promote nor to limit growth, but rather to direct and manage it," especially toward designated " 'growth' areas." *Id.* ch. 16(A)(1)–(2). One of the economic goals set forth is "[t]o encourage traditional forms of livelihood, including the full range of economic opportunity...." *Id.* ch. 16(B). Pursuant to this goal, the plan recognizes that "[t]ourism is central to Camden's economic health," and that the attendant increases in visitor population, traffic and demands for Town services "are ... an acceptable price to pay compared to the economic gains received, provided ... the commercial core serving this sector (retail establishments, lodgings, restaurants, and similar enterprises) is confined to the traditional downtown and harbor area...." *Id.* ch. 16(B)(1). The plan encourages accommodating "commercial growth through adaptive re-use of existing buildings...." *Id.* ch. 16(B)(2).

Here, the record discloses that both the Camden Harbour Inn and the Norumbega Inn, as well as a number of like lodgings, are located in the Traditional Village district, designated as a growth area by the comprehensive plan. There is nothing in the record to indicate that the existing Norumbega Inn structure cannot accommodate thirteen sleeping rooms. The record does not support the assertion of the plaintiffs that the legislative body of the Town did not consider whether the amendments enacted by it were consistent with and in basic harmony with the Town's comprehensive plan. The plan, previously enacted by the legislative body, was in existence at the time of the enactment of the present amendments to the Town's zoning ordinance.

## II.

 The plaintiffs next contend that the amendments violate the equal protection and due process clauses of the United States and Maine Constitutions.[2] They argue that the amendments are arbitrary and discriminatory and that public notice was inadequate. We disagree.

 It is well established law that zoning ordinances are presumed to be constitutional. The burden is on the plaintiffs to show by clear and irrefutable evidence that the amendments infringe on paramount law and to establish a complete absence of any state of facts that would support the amendments. *F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 859 (Me.1992) (citation omitted). In addition, to establish a claim of denial of equal protection, the plaintiffs have the burden to establish that the amendments are, on their face, *prima facie* violative of equal protection before the Town is obligated to demonstrate there is a rational basis for the amendments. *Begin v. Town of Sabattus,* 409 A.2d 1269, 1276 (Me.1979). The plaintiffs do not contend the amendments are facially violative of equal protection nor have they produced any evidence to establish that no state of facts exists to support the amendments. There is no evidence in this record to support the contention of the plaintiffs that public notice was constitutionally deficient.

## III.

 We find no merit in the plaintiffs' contention that the discussion of the settlement of the litigation between the Town and

---

**2.** Amendment XIV of the United States Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These provisions are reflected in Article I, section 6–A of the Maine Constitution, that provides: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."

Norumbega Inn at a May 17, 1993 executive session of the Board of Selectmen violated the Freedom of Access Law, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1995). Section 405(6)(E) specifically provides that "[c]onsultations between a body or agency and its attorney concerning ... pending or contemplated litigation [and] settlement offers" may be deliberated in executive session. Section 405(4) requires that a motion to go into executive session "shall indicate the precise nature of the business of the executive session." The record clearly establishes that the Board of Selectmen, prior to going into executive session to discuss the pending litigation involving the Norumbega Inn, stated the session was for the purpose of receiving from the Town's attorney updates on the status of that litigation.

 Nor do we find merit in the plaintiffs' assertion that the amendments must be voided because, based on improper motives, the Board of Selectmen approved of and recommended the amendments for presentation to the voters. The voters at a town meeting comprise the legislative body of the Town. The law is well established that "[e]vidence as to the motive of the framers of the law or the influences under which they are enacted is not admissible for the purpose of nullifying an ordinance." *Town of Skowhegan v. Heselton*, 117 Me. 17, 20, 102 A. 772 (1917). *See also Dobbs v. Maine School Admin. Dist. No. 50*, 419 A.2d 1024, 1029 (Me. 1980) (courts will not inquire into motives of municipal legislative body nor influences under which it acts, and the same cannot be shown to nullify ordinance duly passed in legal form and within scope of legislative body's powers).

## IV.

 Finally, the plaintiffs contend the trial court erred by its grant of a summary judgment to the Town. We disagree. A summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law."

M.R.Civ.P. 56(c). "In reviewing the grant of a motion for a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the trial court committed an error of law." *Enerquin Air, Inc. v. State Tax Assessor*, 670 A.2d 926, 928 (Me.1996) (quoting *Dubois v. City of Saco*, 645 A.2d 1125, 1127 (Me.1994)). Applying these principles to our review, we conclude the record discloses no genuine issue as to any material fact and the trial court properly determined the Town was entitled to a judgment as a matter of law. *Bailey v. Gulliver*, 583 A.2d 699, 700 (Me.1990).

The entry is:

Judgment affirmed.

All concurring.