STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO. CV-04-784

MORRILL'S CORNER
NEIGHBORHOOD ASSOCIATION,

BRETT MCMILLAN,

JOHN DAY,

JOANNE KENNEDY, and

DEBRA KEENAN,
                    Plaintiffs
                                            ORDER ON PACKARD
                                            DEVELOPMENT, LLC'S MOTION TO
                                            DISMISS MORRILL'S CORNER
            v.                              NEIGHBORHOOD ASSOCIATION
                                            AS A PARTY-PLAINTIFF AND TO
                                            DISMISS COUNTS III-IX

CITY OF PORTLAND

                    Defendant

and

PACKARD DEVELOPMENT, LLC,

            Party-in-Interest.

        This matter is before the court on Party-In-Interest Packard Development, LLC's

(Packard) Motion to: (1) dismiss Morrill's Corner Neighborhood Association (MCNA)

as a party plaintiff; and (2) dismiss Counts III-IX of the Complaint for failure to state a

claim upon which relief can be granted pursuant to M.R. Civ. P. 12(b)(6).[1]

                            **FACTUAL BACKGROUND**

        Plaintiff MCNA is an unincorporated association of residents of the City of

Portland, clustered in the Morrill's Corner area of Portland.  The individual plaintiffs,

Brett McMillan, John Day, Joanne Kennedy, and Debra Keenan, are residents of the

---

[1] Defendant City of Portland has joined in Packard's reply to plaintiffs' opposition to Packard's
Motion to Dismiss.

Morrill's Corner neighborhood. Plaintiffs are seeking a declaration under the Maine Declaratory Judgment Act, 14 M.R.S.A. §§ 5951-5963 (2003), that an Order (Order), issued by the City Council (Council), authorizing an amendment to the City's land use ordinance to permit conditional rezoning of a site in the Morrill's Corner neighborhood, is invalid and void. In addition, in the event this court should conclude that the Council's action, either in whole or in part, is quasi-judicial or administrative in nature, plaintiffs ask this court, pursuant to M.R. Civ. P. 80B, to vacate the Council's Order and remand the matter for further action.

The events leading up to and surrounding the Council's Order, and the grounds upon which plaintiffs bring the instant action are as follows: In May, 2004, Packard filed an application to conditionally rezone property located on Allen Avenue in Morrill's Corner (the Site) pursuant to sections 14-60 through 14-62 of the City's Land Use Ordinance. In doing so, Packard proposed to develop the Site primarily as a "Stop and Shop" retail supercenter and related retail uses. Under the proposal, the Site would include 128,000 sq. ft. of retail space, 2,500 sq. ft. of office space, and 48 residential units. The Site is primarily located in the I-L Industrial zone, although edges of the Site are located in the B-2 Business zone, the R-5 residential zone, and the B-2 Commercial zone.

Pursuant to the City's Land Use Ordinance, the Planning Board conducted public hearings on Packard's application for conditional rezoning. The plaintiffs participated in the public hearing process and the individual plaintiffs have personal and property interests that they allege will sustain particularized injury from the proposed development. One controversial aspect of the project relates to the volume of traffic to be generated by the project. The proposal Packard submitted to the Planning Board included traffic impact studies. Members of the community, including certain plaintiffs, objected to the traffic information submitted by Packard, arguing that it was inaccurate, incomplete, and seriously underestimated the potential traffic impact of the project.

On August 24, 2004, the Planning Board referred Packard's proposal to the City Council without a positive recommendation. Three members of the Board concluded the proposal did not meet requirements for conditional rezoning while three members concluded it did. Those members who supported the project found as a fact that the proposed development "will not exacerbate traffic problems in the Morrill's Corner area." Complaint ¶ 33.

Following the Board's referral of the proposal, Packard submitted to the City Council what plaintiffs allege was a revised and substantially different development proposal. In the course of public hearings conducted by the City Council, Packard conceded that the traffic information initially submitted to the Board was inaccurate and newly submitted traffic studies demonstrated an approximate 40% increase in traffic impact. The new proposal concluded that DOT level of service standards requirements would not be met and that pedestrian and vehicular safety in the project area will be compromised. The Planning Board did not have this information when formulating its referral to the City Council. Plaintiffs, either individually or through counsel, participated in the public hearing before the City Council.

On November 29, 2004 the City Council voted to approve Order #98-04/05 authorizing the proposed rezoning of the Site. This Order authorized a map change amendment to the City's land use ordinance for a conditional rezoning of the Site.

Plaintiffs thereafter filed the instant action. Count I seeks a declaration that the contract zone violates sections 14-60 to 14-62 of the City's Land Use Ordinance and Count II seeks a declaration that the contract zone is inconsistent with the City's comprehensive plan and therefore is in violation of sections 14-60 to 14-62 of the Ordinance. Counts I and II are not at issue in the instant motion to dismiss. Counts III-VIII, respectively, seek declarations that: the proposed contract zone violates 30-A M.R.S.A. § 4352(8); in adopting the Order, the Council failed to follow the requirements

of the Ordinance and thereby denied plaintiffs due process of law; the Order violates the City's subdivision and site plan regulations as it usurps the Planning Board's jurisdiction over subdivision of property; the Order violates the City's site plan regulations and usurps the Planning Board's jurisdiction to review and approve site plans; the Order violates Maine subdivision law, 30-A M.R.S.A. §§ 4401-4407 (1996) and; the Order violates constitutional provisions for separation of powers. Count IX represents an appeal under M.R. Civ. P. 80B and claims that the action of the Council constitutes an abuse of discretion, an error of law, is based on findings unsupported by substantial evidence in the record, is arbitrary, capricious, and denies plaintiffs due process of law.

## DISCUSSION

### Motion to Dismiss MCNA as a Party Plaintiff

Packard has moved to dismiss MCNA as a party plaintiff arguing that, as an unincorporated association, MCNA lacks standing to sue in its own name. In *Tisdale v. Rawson*, 2003 ME 68, 822 A.2d 1136, the Law Court explained that an unincorporated association generally "does not have capacity to sue or be sued in its own name, absent specific statutory authorization." *Id.* ¶ 15, 822 A.2d at 1140 (citing *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1202-03 n.1 (Me. 1982)). In opposition, plaintiffs do not contest that MCNA is not incorporated. Instead, they cite *Widewaters Stillwater Co., LLC v. Bangor Area Citizens Organized for Responsible Dev.*, 2002 ME 27, 790 A.2d 597, as support for the proposition that an unincorporated association has standing when it represents members who have alleged particularized injury. The court disagrees that *Widewaters* stands for such a proposition. In *Widewaters*, the Law Court did not address the question presented here. *See Widewaters*, 2002 ME 27, ¶ 1, 790 A.2d at 598. Further, *Tisdale*, which squarely addressed the question of an unincorporated association's standing to sue and be sued, was decided more than a year after *Widewaters* and

unequivocally affirmed the well-established rule that such associations lack standing. *See Tisdale*, 2003 ME 68, ¶ 15, 822 A.2d 1140. The court therefore GRANTS Packard's motion to dismiss MCNA as a party to this action.

Motion to Dismiss Counts III – IX: Standard of Review

Packard has also moved to dismiss Counts III-IX pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court considers allegations of the complaint as if they were admitted and in the light most favorable to the plaintiff. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43, 47. "A dismissal should only occur when it appears 'beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quoting *Hall v. Bd. of Envtl. Prot.*, 498 A.2d 260, 266 (Me. 1985)).

Count III: Violation of 30-A M.R.S.A. § 4352(8)

Count III seeks a declaration that the Order violates 30-A M.R.S.A. § 4352(8). Section 4352(8) provides in relevant part:

> A zoning ordinance may include provisions for conditional or contract zoning. All rezoning under this subsection must:
>
> . . .
>
> B. Establish rezoned areas that are consistent with the existing and permitted uses within the original zones.

*Id.*

In the instant case, the Site will overlay three distinct zones: I-L (light industrial), R-5 (residential), and B-2 (community business). Under the existing ordinance, the following uses are currently permitted in the I-L zone, the zone over which much of the Site will be located: low impact industry, research and development facilities, indoor recreation and amusement centers, nurseries, lumber yards, building contractors

5

including outdoor storage of equipment, repair services, dairies, day cares, dog training facilities, intermodal transit facilities, utilities and marinas. Under the existing ordinance, the purpose of the I-L zone, as declared in section 14-231 of the City's Ordinance, is as follows:

> The low impact industrial zone is intended to provide areas in which low impact industrial uses will be compatible with adjacent residential uses, will provide a buffer between residential neighborhoods and the I-M or I-H industrial zones, or will stand alone as a smaller scale industrial district.
>
> The I-L zone is located adjacent to residential neighborhoods, business uses and other industrial uses where the low density nature of the uses, as well as their strict performance standards, will ensure the compatibility of the uses with other adjacent industrial and nonindustrial uses.

Id.

The currently permitted uses in the R-5 Residential zone, pursuant to section 14-117, include single and two-family residences, multiplex residences, planned residential developments, handicapped residences, manufactured housing, parks and recreation areas, home occupations, special residential living units and municipal uses. Under section 14-119 of the Ordinance, uses permitted as conditional uses in the R-5 zone include group homes, conversions of non-residential structures to residences, conversions of residences to lodging houses, hospitals, care facilities, schools, colleges universities, churches and private clubs. Under section 14-119, all other uses, including retail and business uses, are expressly prohibited in the R-5 zone.

Finally, under the City's ordinance, retail uses are currently permitted in the B-2 Community Business zone.

In Count III, plaintiffs assert that, under 30-A M.R.S.A. § 4352(8) the uses in the contract zone are limited to those that would have been permitted in the original zones. Because the specific retail and business uses proposed for the Site are to be located on portions of the site originally zoned I-L and R-5, and such uses are expressly prohibited

6

in the I-L and R-5 zones, plaintiffs assert that the rezoned area cannot be consistent with the original zones.

In support of its motion to dismiss, Packard argues that because the Site is located at the confluence of three zoning districts and because the individual uses proposed for the Site are each consistent with one of the three existing uses, the rezoning complies with section 4352. Accordingly, because Packard argues that the rezoning complies with the explicit language of the statute it maintains that Count III fails to state a claim upon which relief can be granted.

Under the definitional section of the statute, conditional zoning "means the process by which the municipal legislative body may rezone property to permit the use of that property subject to conditions not generally applicable to other properties similarly zoned." 30-A M.R.S.A. § 4301(4). Additionally, "contract zoning" under the statute, "means the process by which the property owner, in consideration of the rezoning of that person's property, agrees to the imposition of certain conditions or restrictions not imposed on other similarly zoned properties." 30-A M.R.S.A. § 4301(5). Under Maine's planning and land use statute, therefore, permitted land uses are necessarily flexible and a municipality is permitted to alter existing permitted uses in the interests of furthering its comprehensive plan. *See* 30-A M.R.S.A. § 4352(2) (1996 & Supp. 2004); and *Vella v. Town of Camden*, 677 A.2d 1051, 1053 (Me. 1996).

Despite the important objectives furthered by permissible forms of conditional zoning, however, Maine's statutory scheme places limitations on conditional rezoning. These limitations, some of which are accomplished through section 4352, help insure consistency and prevent municipal overreaching meant to benefit a single property owner to the detriment of others. *See Vella*, 677 A.2d at 1053-54 (discussing illegal "spot zoning" as "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such

7

property and to the detriment of other owners"). *Id.* (*quoting Rodgers v. Village of Tarrytown*, 302 N.Y. 115, 96 N.E.2d 731, 734 (N.Y. 1951)).

In the instant case, the ordinance amendment authorized by the Council's Order will permit I-L, R-5 and B-2 uses on a large parcel of land that overlays each of those zones. Due to the layout of the Site, however, the uses that will be made of certain portions of the Site do not comply with the existing zone restrictions. Currently, retail uses are not permitted in the I-L and R-5 portions of the Site. Under Packard's proposal, however, retail spaces will be created in the I-L and R-5 zones. Plaintiff has alleged that such a result is in violation of section 4352(8)'s requirement that rezoned areas be consistent with existing and permitted uses.

Because the language of section 4352(8) requires that newly permitted uses be consistent with existing and permitted uses, the court cannot say, as a matter of law, that plaintiff has failed to state a claim upon which relief can be granted. Instead, there remain questions of fact as to whether the uses permitted under the Order are consistent with existing and permitted uses. Accordingly, plaintiffs are entitled to introduce evidence bearing on that question.

To the extent, however, that Count III is grounded upon an assertion that section 4352(8) precludes the Council from conditionally rezoning, for example, an R-5 to an I-L zone even if the new I-L uses are consistent with the existing and permitted uses in the R-5 zone, plaintiffs' argument is unavailing. Such an argument, if sustained, would render the zoning amendment process superfluous and this the court will not do. Therefore, insofar as Count III is grounded on an allegation that the newly permitted uses are not consistent with existing and permitted uses, plaintiffs have stated a claim upon which relief can be granted and Packard's motion to dismiss as to that portion of Count III is DENIED. However, insofar as Count III is grounded on an allegation that the Order violates section 4352(8) simply because it authorizes a change in the uses

8

permitted within the Site, Packard's motion to dismiss as to that portion of Count III is GRANTED.

Count IV: Violation of Due Process

In Count IV, plaintiffs argue that their due process rights were violated because they were denied their right to public notice and an opportunity to be heard prior to the enactment of a conditional or contract zoning amendment. In support of its motion to dismiss, Packard argues that, under Maine case law, the plaintiffs are entitled to very limited due process protections and, further, that plaintiffs received all of the process they were due.

Citing *Crispin v. Town of Scarborough*, 1999 ME 112, 736 A.2d 241 and *F.S. Plummer Co., v. Town of Cape Elizabeth*, 612 A.2d 856 (Me. 1992), Packard argues that zoning is a legislative act and plaintiffs are therefore not entitled to due process protection when their property rights are adversely affected by the legislative acts of government. As Packard correctly points out, in *Crispin* the Law Court explained that "[g]enerally, members of the public are not entitled to protection under the Due Process Clause when their property rights are adversely affected by the legislative acts of the government." *Crispin*, 1999 ME 112, ¶ 18, 736 A.2d at 247. The court also reiterated that "zoning is a legislative act." *Id. (quoting F.S. Plummer*, 612 A.2d at 861). Accordingly, while sections 4352(1) & (8), as well as the City's own ordinance, require that the public be given adequate notice and a right to be heard, according to the Law Court, those protections "exceed any level of procedural protection that would be required by either" the U.S. or the Maine state constitutions. *Crispin*, 1999 ME 112, ¶ 18, 736 A.2d at 247.

As plaintiffs point out, however, the process afforded to those impacted by legislative acts and that afforded to those impacted by quasi-judicial acts are substantially different. *See Pelkey v. Presque Isle*, 577 A.2d 341, 343 (Me. 1990); and *F.S.*

9

*Plummer*, 612 A.2d at 861. When an entity acts in a quasi-judicial capacity, persons whose rights are affected by that entity's actions are entitled to greater constitutional protections. *See Crispin*, ¶ 18, 736 A.2d at 247. An agency acts quasi-judicially when it adjudicates the rights of the parties before it. *See Irish v. Gimble*, 1997 ME 50, ¶ 15, 691 A.2d 664, 672. Further, when planning boards act on an application for subdivision approval, the Law Court has held that that agency is acting in a quasi-judicial capacity. *Cunningham v. Kittery Planning Bd.*, 400 A.2d 1070, 1077 (Me. 1979). *See also Glasser v. Town of Northport*, 589 A.2d 1280, 1283-84 (Me. 1991).

Although subdivision approval by planning boards has been deemed a quasi-judicial act, the court does not agree that a planning board, in considering a proposal for conditional rezoning, acts quasi-judicially. In the context of proposed subdivisions, planning boards consider applications and either grant or deny approval. *See* 30-A M.R.S.A. § 4403(5). In that context, the person proposing the subdivision bears the burden of proof, the planning board is required to make findings of fact, and it is the planning board that ultimately renders a decision affecting the property rights of individuals. 30-A M.R.S.A. § 4403(6).

In the context of the Board's decision here, however, no decision impacting a property right was made. Rather, the Board referred the proposal to the City Council, which was the body ultimately charged with either authorizing or refusing a proposed conditional rezoning. The Planning Board was not acting in its quasi-judicial capacity but, rather, in an advisory capacity. *See* City of Portland, Me., Land Use Code § 14-30(f) (vesting the Planning Board with the power "[t]o hear, review and offer its recommendations to the city council on applications for zoning changes"); and *Gimble*, ¶ 15, 691 A.2d at 672. Plaintiffs fully participated in the hearings before the City Council and their comments relating to the amended Packard proposal were heard by the Council. Accordingly, the court concludes that the procedural protections afforded to

the plaintiffs in this case were sufficient. Packard's Motion to Dismiss Count IV is GRANTED.

## Counts V-VIII: City Council Usurped Planning Board's Powers

Counts V through VIII allege that the Council's Order usurps the Planning Board's jurisdiction over subdivision and site plan review. In support of its motion to dismiss, Packard argues that Counts V-VIII are not ripe for judicial review because the Planning Board has neither accepted nor rejected a site plan application submitted by Packard. Packard further argues that the Order does not attempt to limit the scope of the Planning Board's powers in terms of what it can consider in connection with Packard's future subdivision and site plan applications. Instead, Packard argues that the City Council sought only to define the extent to which Packard could deviate from the conditions set out in the Order when making its applications to the Board. The Order did not, according to Packard, seek to limit the scope of the Planning Board's review of Packard's applications. The court agrees.

When the City Council issued the Order, it did not make any determination with respect to the project's compliance with its Order, nor could it have given that no project plan has yet been filed. Instead, the City Council conditioned the zoning change upon Packard meeting the various restrictions provided in the Order. *See* Portland City Council Order 98/04-05 at 2. Further, the City Council explicitly provided that that the project "*shall* be subject to site plan review by the Planning Board, and if applicable, subdivision review by the Planning Board." *Id.* at 4 (emphasis added). Accordingly, after reviewing the Order, the court concludes that the City Council did not in any way usurp the power or discretion of the Planning Board. This is not to say, however, that plaintiffs' are precluded from challenging the zoning change itself as they have in Counts I, II, and III, which counts are not affected by this order. Nevertheless, because

11

the court concludes that there has been no usurpation of the Planning Board's powers, the court hereby GRANTS Packard's motion to dismiss Counts V-VIII.

Count IX: Appeal of Governmental Action Under M.R. Civ. P. 80B

Count IX is pled as an appeal of Council's Order under Rule 80B. Defendants argue that because a zoning decision is a legislative act, review under Rule 80B is not available. In opposition, plaintiffs state that Count IX was pled as an 80B appeal out of an abundance of caution in the event that the court deems the Council's zoning amendment to have been quasi-judicial. Because the zoning amendment related to a single property and does not represent a town-wide change, and because it was the result of a request made by a single property owner, plaintiffs argue that the Council's action was quasi-judicial and judicial review under 80B may be appropriate. The court disagrees.

The action for which plaintiffs seek judicial review in Count IX is the action by the City Council in issuing the Order that authorizes a conditional rezoning of the Site. As discussed above, the Law Court has said that zoning ordinance amendments are legislative, not quasi-judicial. *See Crispin*, 1999 ME 112, ¶ 18, 736 A.2d at 247. In addition, the Law Court has previously explained that an action seeking a declaratory judgment and not an appeal under M.R. Civ. P. 80B, is the appropriate mechanism for challenging a zoning decision. *See F.S. Plummer*, 612 A.2d at 859 (citing *La Bonte v. Waterville*, 528 A.2d 1262, 1263-64 (Me. 1987). The court therefore concludes that plaintiffs' causes of action were properly pled as a declaratory judgment action and because zoning ordinance amendments are legislative, judicial review under 80B is not available. Defendant's motion to dismiss Count IX is GRANTED.

The entry is

Packard's Motion to Dismiss Morrill's Corner Neighborhood Association as a Party-Plaintiff is GRANTED.

Packard's Motion to Dismiss as it relates to Count III is DENIED.

Packard's Motion to Dismiss as it relates to Count IV is GRANTED.

Packard's Motion to Dismiss as it relates to Counts V-VIII is GRANTED.

Packard's Motion to Dismiss as it relates to Count IX is GRANTED.


Dated at Portland, Maine this 9th day of May, 2005.

Robert E. Crowley
Justice, Superior Court

PEGGY MCGEHEE ESQ
PERKINS THOMPSON HINCKLEY & KEDDY
PO BOX 426
PORTLAND ME 04112-0426

and County
Box 287
ine 04112-0287

PENNY LITTELL ESQ
GARY WOOD ESQ
389 CONGRESS ST
PORTLAND ME 04101

ROY PIERCE ESQ
MATTHEW GILDART ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-784

REC CUM-11/22/05

BRETT MCMILLAN, JOHN DAY,
JOANNE KENNEDY, and DEBRA
KEENAN

    Plaintiffs

    v.

THE CITY OF PORTLAND, MAINE

    Defendant, and

PACKARD DEVELOPMENT, LLC,

    Party-in-Interest

ORDER ON DECLARATORY
JUDGMENT ACTION

On November 15 and 16, 2005, a jury-waived trial was held on Counts, I, II, and III of Plaintiffs' complaint. These counts request a declaratory judgment that a conditional zoning contract approved by the City Council of City of Portland ("City Council") on November 29, 2004, rezoning approximately 20 acres of land in Morrill's Corner, ("Site") (I) violates Portland's Land Use Ordinance §§14-60 to 14-62, (II) is inconsistent with Portland's Comprehensive Plan, and (III) violates the requirements of 30-A M.R.S.A. § 4352(8). In an opinion dated May, 9 2005, this court granted Party-in-Interest Packard Development, LLC's ("Packard") motion to dismiss counts IV through IX of Plaintiffs' complaint.

## BACKGROUND

The named plaintiffs ("Plaintiffs") are residents of neighborhoods adjacent to the Site. One of the plaintiffs, Ms. Kennedy, abuts the Site, and the other two plaintiffs live on streets off of Allen Avenue in the immediate vicinity of the Site. Plaintiffs express concern mainly with traffic safety on Allen Avenue if the Site is

1

developed on the scale proposed by Packard. Plaintiffs also express concern with a lack of buffering between the residential area and the Site, operations noise from the Site, and future attempts to access the development from the adjacent residential area rather than the designated access point.

The Site is comprised of several contiguous parcels of land, bounded on the South by the Guilford Rail Line, on the East by industrial warehouses, and on the North by established single-family residences. It has street frontage to the West on Allen Avenue north of the confluence of Forest, Stevens and Allen Avenues, all of which are heavily-trafficked streets, and one of which, Forest Avenue, is a major Portland arterial. Packard's plan creates a single access point to the proposed development from its frontage on Allen Avenue.[1] This access point is 300 feet from the Guilford railway. Trains cross this railway approximately four times a day and several times during the night.

Packard's plan is for a "mixed-use" development that includes a 65,000 square-foot anchor store to be occupied by a Stop-and-Shop supermarket, several smaller retail establishments, a limited amount of office space, three and a half acres of dedicated green space with a pedestrian/bicycle trail, and approximately 31 residential units. The total development proposed on the Site has a footprint of approximately 130,000 square feet. The traffic engineers hired by Packard have estimated that the development will generate an additional 525 vehicle trips per hour through Allen Avenue to the Site on weekdays, up from 85 trips per hour currently.

---

[1] The plan also calls for a one-way access into the Site from the Northeast corner, through Morrill Street in the residential neighborhood.

Prior to rezoning, approximately 80% of the Site had been designated as an I-L, or industrial low-impact zone, with the remaining 20% of the site zoned as R-5 residential and B-2 commercial. The Site is currently mostly developed, with a strip of woods on the northern edge of the site adjacent to the residential community. Many of the structures on the Site, which are warehouse-like, have been vacated, and the area has fallen prey to weeds and brush growth, vandalism, and dumping. The Site also contains five residential units that will be demolished.

Packard's plans for development of the Site began in 2002. Initially, the plan was to create a solely commercial development. However, after a failed attempt to purchase two parcels on the Site owned by the City, Packard revised its proposal to include residential, office, and green spaces as well, and reduced the size of the planned supermarket from 75,000 square feet to 65,000 square feet. Even after the revision of its plans, the City's Planning Board failed to recommend the development and the conditional zone, returning a vote of 3-3 to the City Council. Notwithstanding this input, on November 29, 2004, after a public hearing, the City Council voted 9-0 to approve Order # 98-04/05, authorizing a conditional rezone of the Site for the development proposed by Packard. Subsequently, the City Council also approved sale of its Site parcels to Packard. Plaintiffs brought this action for declaratory relief subsequent to the City Council's approval of the Site's conditional zone.

## DISCUSSION

### I.    Procedure and Standard of Review

The court's charge in this action seeking declaratory relief is to assess whether the City Council's vote to approve the conditional zone is valid under the law governing conditional zones.

30-A M.R.S.A. § 4351 et seq. provides express limitations on municipal home rule authority. § 4352(8) imposes conditions on a municipality's grant of conditional and contract rezoning. This section states in pertinent part:

> A zoning ordinance may include provisions for conditional or contract zoning. All rezoning under this subsection must:
> A. Be consistent with the local growth management program adopted under this chapter;
> B. Establish rezoned areas that are consistent with the existing and permitted uses within the original zones;

In addition to these limitations, Portland's Zoning Ordinance §§ 14-60 to 14-62 states that the City Council has authority to rezone a parcel of property if, due to "the unusual nature or unique location of the development proposed, the city council finds it necessary or appropriate to impose, by agreement with the property owner or otherwise, certain conditions or restrictions in order to ensure that the rezoning is consistent with the city's comprehensive plan."

The parties agree that, under this law, the questions presented to the court are whether the City Council correctly determined that the conditional zone is consistent with the existing and permitted uses within the original zones as well as with the City's comprehensive plan ("Comprehensive Plan.")

The Comprehensive Plan is a compilation of policy directives and goals for the development of the City, developed by various departments within the City government. Among other things, the policies address infrastructure, transportation resources, industry and commerce, residential housing, and the development of recreational open spaces.

4

It is the job of the City Council to integrate and balance these policies when it is faced with a proposal for a conditional zone. *See Adelman v. Town of Baldwin,* 2000 ME 91, ¶ 24; 750 A.2d 577, 585; *La Bonta v. City of Waterville,* 528 A.2d 1262, 1264 (Me. 1987). The court's assessment of the City Council's action in adopting a conditional zone is limited to reviewing the record evidence presented to the City Council in order to determine if it supports the Council's conclusion that the conditional zone is consistent with the Comprehensive Plan and with the existing and permitted uses within the original zones. *See Adelman,* 2000 ME 91 at ¶ 24; *Vella v. Town of Camden,* 677 A.2d 1051, 1053 (Me. 1996); *La Bonta,* 528 A.2d at 1264.

The parties proceeded to a jury-waived trial in this action, which trial presented in a vivid, interactive format largely the same information that was presented to the City Council at its November 2004 conditional rezone hearing. However, because of the task before the court, the evidence presented at trial can have no significance independent of what the parties have established was presented to the City Council. This is because the City Council's action is either lawful or unlawful with respect solely to the information it had before it.[2] *See LaBonta,* 528 A.2d at 1265. Zoning is a legislative function, *Benjamin v. Houle,* 431 A.2d 48, 49 (Me. 1981), and it would violate the separation of powers if the court were to act as a super-legislature, and take independent evidence on the substantive zoning issue before the City Council. *Cf. Adelman,* 2000 ME 91 at ¶ 22; *LaBonta,* 528 A.2d at 1265.

Thus, even though the caption of this action is one for "declaratory judgment," the action is essentially an appeal, and differs from an action under

---

[2] This is not a case in which the plaintiffs have due process or bias claims. Plaintiffs were afforded all of the process that was due with regard to participation in the City Council's decision, and there is no allegation that any members of the City Council were compromised.

M.R.Civ.P. 80B only to the extent the decision appealed from is one based in the City's decision in its legislative capacity, rather than in its administrative or quasi-judicial capacity. Under 80B, the parties present a record on appeal to the court, and the court's review is limited to the record except under special circumstances. Such should also be the case in an action for a declaratory judgment that a municipality has legislated in derogation of the law. In such an action, a motion for summary judgment would function in the same capacity as an 80B appeal and would be the proper procedure for obtaining review of the record by the court. Although either party might move for summary judgment, presentation of a record of the public hearing and the evidence presented to the law-making body in such cases remains the plaintiff's burden. This limitation on the court's ability to take independent evidence is necessary to preserve both the role of the court and the legislative power delegated to the City Council in the area of zoning.

Additionally, as this is a review of legislative action and not of quasi-judicial or administrative action, the court's standard of review is different than in an 80B appeal. The City Council is not charged by law, as is a Planning Board or a Zoning Board of Appeals, with making specific findings of fact and conclusions of law. *See e.g. Carroll v. Town of Rockport*, 2003 ME 135, ¶¶ 26 - 31; 837 A.2d 148, 156-157; *see also* 30-A M.R.S.A. § 2691(3)(E). Related to this, there is also no provision whereby this court may remand the City Council's decision for further findings of fact or conclusions of law. *See* M.R.Civ.P. 80B(c). Thus, the sole province of the court in this action is to determine whether the City Council could rationally have adopted the conditional zone in light of the evidence presented to it, the various policies articulated in the Comprehensive Plan, and the statutory charge under 30-A M.R.S.A. § 4352(8) that the zone be consistent with existing and permitted uses

within the original zones. Finally, under this standard, it is the Plaintiffs' burden to prove inconsistency, i.e. that the conditional zone is not consistent with any rational view of the Comprehensive Plan or of the existing and permitted uses within the original zones. *See City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 18; 803 A.2d 1018, 1023; *Adelman*, 2000 ME 91 at ¶ 22; *LaBonta*, 528 A.2d at 1265.

The parties have stipulated that the evidence contained in Joint Exhibits 9, 12, 13, 14, 67, 68, 69, 80, and 81, and City Exhibits 1 and 2 constitute the universe of evidence presented to the City Council for the conditional zone hearing. In making its determination as to the City Council's action, the court will confine itself to a consideration of this evidence.

## II.     Was the City Council's Approval of the Conditional Zone Lawful?

The parties agree that, from the cases and dictionary definitions, "consistent" means "in basic harmony with," *Dimoulas*, 2002 ME 133 at ¶ 18; *Adelman*, 2000 ME 91 at ¶ 22; *LaBonta*, 528 A.2d at 1265, or more expansively, "coexisting and showing no noteworthy opposing, conflicting, inharmonious, or contradictory qualities or trends." Webster's Third New International Dictionary (1986). The City Council's approval of the conditional rezoning is lawful if the zoning is consistent with the comprehensive plan and if the rezoned area is consistent with the existing and permitted uses within the original zones.

### (a) Consistency with the Comprehensive Plan

A stated goal of the Comprehensive Plan, found in **Housing: Sustaining Portland's Future**, is:

> Portland's Comprehensive Plan encourages a manageable level of growth that will sustain the city as a healthy urban center in which to live and work and to achieve a shared vision for Portland. Portland should encourage sustainable development patterns and

7

opportunities within the city by promoting efficient land use, conservation of natural resources, and easy access to public transportation, services and public amenities.

Evidence was presented to the City Council that Packard's revised development plan would be consistent with the goal of sustaining the city as a healthy urban center in which to live and work. It contains both residential and green spaces as well as commercial development, and is located next to a major Portland arterial, Forest Avenue, which is regularly serviced by public transportation. The City Council also had information that bus service would be brought into the development. The City Council was also presented with evidence that this area was constrained on one side by the railroad and on the other by a residential area, with minimal street access to Allen Avenue, and that, in spite of an earlier solicitation by the City for bids for redevelopment, the Site had remained unimproved for decades. The City Council could rationally have determined that this conditional zone provides an appropriate solution for promoting efficient land use in this complex area of the city.

The City Council also had evidence before it that the Morrill's Corner area is particularly problematic in terms of traffic congestion, and that the conditional zone would allow for a development that would increase seven-fold the number of daily trips through the area. The **Portland Industry and Commerce Plan Recommendations Report (June 1994)**, incorporated into the Comprehensive Plan, stated, "with the exception of a few isolated locations, ... there is adequate capacity to handle additional traffic at acceptable operating levels on all Portland arterials. The isolated locations include Morrills Corner." However, Plaintiffs have pointed to nothing in the Comprehensive Plan that states that when a proposed conditional zone would exacerbate already congested traffic the ability

8

to weigh the relative importance of the many goals articulated within the Comprehensive Plan is taken out of the hands of the City Council. Nor does the Comprehensive Plan require the City Council to find that Packard's proposal is the best possible use of the Site. It is merely required to find that the proposed conditional zone is consistent with the Comprehensive Plan.

Upon review, it is apparent from the evidence presented to the City Council that its determination that the conditional zone is consistent with the comprehensive plan was rational. Moreover, that the City Council did in fact consider the various parts of the Comprehensive Plan and weigh them together in a responsible and rational manner is underscored by the City Council's preamble to its conditional zone contract with Packard, which states in part:

> "The purpose of this contract rezoning is to provide for a mixed use development, including a community shopping center, residential units, offices and a boxing and fitness facility...
> Substantial public improvements will be required to support any redevelopment of the property, including but not limited to traffic improvements in Morrill's Corner...
> Packard has developed a traffic improvement plan, which plan has been reviewed by the City...
> The City, by and through its City Council has determined that said rezoning would be and is pursuant to and consistent with the City's comprehensive land use plan and will establish uses that are consistent with the uses in the original zones and the surrounding areas...
> The City has determined that the proposed development will be designed and operated so that it will prevent undue adverse environmental impacts, substantial diminution of the value or utility of neighboring structures, or significant hazards to the health or safety of neighboring residents by controlling noise levels, emissions, traffic, lighting, odors, and any other potential negative impacts of the proposal through the design and implementation of significant public traffic improvements, stormwater drainage improvements, landscaping and buffering...
> The City has determined that because of the unusual nature and unique location of the proposed development and the need for significant public improvements it is necessary and appropriate to have imposed the following conditions and restrictions in order to

9

ensure that the rezoning is consistent with the City comprehensive land use plan..."

*(b) Consistency with "Existing and Permitted Uses" Under 30-A M.R.S.A. § 4352(8)*

§ 4352(8) states in part: "All conditional zoning must establish... rezoned areas that are consistent with the existing and permitted uses within the original zones." This requirement does not prohibit the introduction of new uses in an area. As the court already stated in its May 9, 2005 opinion, this section cannot be construed to prohibit, for example, the rezoning of an I-L zone to a B-2 zone, for such a reading would render the zoning amendment process superfluous. Rather, this subsection requires only that the legislative body consider whether any rezoning would be in basic harmony with existing and permitted uses within the area to be rezoned.

Here, the contract zone contains two existing and permitted establishments, a restaurant and a boxing club. The City Council could rationally have concluded on the evidence presented to it that the proposed mixed-use commercial/residential development for which they were approving the conditional zone would be in harmony with these existing and permitted uses.

Moreover, to the extent § 4352(8) requires the legislative body to look outside the boundaries of the proposed conditional zone, the City Council had evidence before it that the development within the zone would adequately buffer the sensitive residential area to the north by placing landscaping and a walkway, and multi-family residences between the commercial development and the existing single-family residences outside of the zone. Where traffic congestion and safety issues were concerned, the City Council could rationally have concluded that the proposed contract zone would be consistent with existing and permitted

10

uses based on the peer review, commissioned by the City Council, of Packard's traffic study, which concluded that "the Packard Development project at Morrill's Corner. . . can satisfy requirements for the issuance of a MaineDOT Traffic Movement Permit."

The entry is:

> The court declares that the City of Portland City Council's Order # 98-04/05 is valid and consistent with applicable law governing conditional zones.

Dated at Portland, Maine this _22nd_ day of _November_, 2005.

Robert E. Crowley
Justice, Superior Court

MORRILL'S CORNER NEIGHBORHOOD ASSOC-DISMISSED - PLAINTIFF
BRETT MCMILLAN - PLAINTIFF

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2004-00784

**DOCKET RECORD**

Attorney for: BRETT MCMILLAN
PEGGY MCGEHEE  - RETAINED 12/30/2004
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


Attorney for: BRETT MCMILLAN
DAVID MCCONNELL  - RETAINED 09/01/2005
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


JOHN DAY  - PLAINTIFF


Attorney for: JOHN DAY
PEGGY MCGEHEE  - RETAINED 12/30/2004
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


Attorney for: JOHN DAY
DAVID MCCONNELL  - RETAINED 09/01/2005
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


JOANNE KENNEDY  - PLAINTIFF


Attorney for: JOANNE KENNEDY
PEGGY MCGEHEE  - RETAINED 12/30/2004
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


Attorney for: JOANNE KENNEDY
DAVID MCCONNELL  - RETAINED 09/01/2005
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


DEBRA KEENAN  - PLAINTIFF


Attorney for: DEBRA KEENAN
PEGGY MCGEHEE  - RETAINED 12/30/2004
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426

PORTLAND ME 04112-0426


Attorney for: DEBRA KEENAN
DAVID MCCONNELL  - RETAINED 09/01/2005
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426


vs
THE CITY OF PORTLAND, MAINE - DEFENDANT

'
Attorney for: THE CITY OF PORTLAND, MAINE
GARY C WOOD  - RETAINED 01/25/2005
OFFICE OF CORPORATION COUNSEL
389 CONGRESS STREET
PORTLAND ME 04101


Attorney for: THE CITY OF PORTLAND, MAINE
PENNY LITTELL  - RETAINED 01/25/2005
CITY OF PORTLAND
389 CONGRESS STREET
PORTLAND ME 04101


PACKARD DEVELOPMENT, LLC - PARTIES IN INTEREST


Attorney for: PACKARD DEVELOPMENT, LLC
ROY PIERCE  - RETAINED 02/10/2005
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


Attorney for: PACKARD DEVELOPMENT, LLC
MATTHEW B GILDART  - RETAINED 02/10/2005
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 12/29/2004

## Docket Events:
12/30/2004 FILING DOCUMENT - COMPLAINT FILED ON 12/29/2004

12/30/2004 Party(s):  BRETT MCMILLAN
           ATTORNEY - RETAINED ENTERED ON 12/30/2004
           Plaintiff's Attorney: PEGGY MCGEHEE

           Party(s):  JOHN DAY