STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                                    DOCKET NO. AP-07-50

STATE OF MAINE, ss, Clerk's Office
SUPERIOR COURT
JUL 0 3 2008
RECEIVED

MICHAEL BRENNER, DANIEL S. CHASE,
TIM Q. LY, MATTHEW PETERS and
ALAN PROSSER
                                    Plaintiffs

                                                    ORDER ON PLAINTIFFS'
v.                                                  RULE 80B APPEAL

CITY OF PORTLAND, MAINE,
AVESTA HOUSING DEVELOPMENT CORP.,
AVESTA FLORENCE HOUSE LP,
FLORENCE HOUSE HOUSING CORP., INC., and
FLORENCE HOUSE CONDOMINIUM ASSOCIATION,
                                    Defendants


Before the Court is an appeal brought pursuant to M.R. Civ. P. 80B by the

Plaintiffs seeking judicial review of a decision by the City Council acting on

behalf of the Defendant City of Portland to approve the conditional zoning

agreement sought by Defendant Avesta Housing Development Corporation.

## BACKGROUND

Plaintiffs Michael Brenner, Daniel Chase, Tim Ly, Matthew Peters and

Alan Prosser (collectively, "Plaintiffs") separately own properties on St. John

Street in Portland, Maine.    Defendants Avesta Housing Development

Corporation, Avesta Florence House LP, Florence House Housing Corporation,

Florence House Condominium Association (collectively, "Avesta") propose to

construct and operate a project known as "Florence House" on a parcel located at

190 Valley Street in Portland, Maine ("the property").  The property is located

between St. John Street and Valley Street within the B-2 Zone (Business-2 Zone).

The B-2 Zone contains both residential and commercial properties.

The property consists of a single lot approximately 25,000 square feet in area. Florence House would consist of three stories and a finished basement and contain approximately 31,272 square feet of floor space.

Florence House is designed to serve the homeless women population of Portland. Within the single structure constituting Florence House are two proposed units each of which would be separately owned. Condominium Unit 1 would consist of the basement and first floor of the building and serve as an emergency homeless shelter with ten beds (the total number of beds can be increased to twenty-five if necessary) and provide fifteen "safe haven" beds. Condominium Unit 2 would consist of the second and third floors and would contain twenty-five (25) single-room occupancy apartments. Florence House, unlike other homeless shelters in Portland, would remain open twenty-four hours a day as a condition of the conditional zoning agreement.

In April 2007, Avesta applied to the Defendant City of Portland (the "City") Planning Board seeking approval of a Conditional Zone Agreement ("CZA") that would allow it to construct Florence House on the property. A CZA was necessary because Florence House could not legally be constructed under the B-2 zoning regulations applicable to the property. The Planning Board held several workshops, which resulted in small changes in Avesta's application. In August 2007, the Planning Board voted to recommend that the City Council accept the CZA. The City Council voted unanimously to adopt the CZA in September 2007. This appeal followed.

## DISCUSSION

By statute, municipalities may provide for conditional or contract zoning in their zoning ordinances so long as certain conditions are met:

2

8.  CONDITIONAL AND CONTRACT REZONING. A zoning ordinance may include provisions for conditional or contract zoning. All rezoning under this subsection must:

A.  Be consistent with the growth management program adopted under this chapter;

B.  Establish rezoned areas that are consistent with the existing and permitted uses within the original zones; and

C.  Only include conditions and restrictions that relate to the physical development or operation of the property.

30-A M.R.S.A. § 4352(8) (2008). The statute also contains notice and hearing requirements that must be met. *Id.* The growth management program that this statute requires every municipality to have is "a document containing the components described in section 4326, including the implementation program, that is consistent with the goals and guidelines established by subchapter II [entitled "Growth Management Program"]." 30-A M.R.S.A. § 4301(9).

The Portland Land Use Code also contains provisions relating to conditional zoning. Under Portland Land Use Code sections 14-60 to 14-62, the City Council has the authority to rezone a property if due to "the unusual nature or unique location of the development proposed, the city council finds it necessary or appropriate to impose, by agreement with the property owner or otherwise, certain conditions or restrictions in order to ensure that the rezoning is consistent with the city's comprehensive plan."

The test for this Court's review of the City's approval of the CZA is whether "from the evidence before it the city council could have determined that the rezoning was in basic harmony with [the City's Comprehensive Plan]." *LaBonta v. City of Waterville*, 528 A.2d 1262, 1265 (Me. 1987) (quoting *Haines v. City*

3

*of Phoenix*, 151 Ariz. 286, 727 P.2d 339, 344 (Ariz. App. 1986)) (internal quotations omitted). The party challenging the conditional zoning has the burden of proving that it is inconsistent with the growth management program, here the City's Comprehensive Plan. *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 18, 803 A.2d 1018, 1023; *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 22, 750 A.2d 577, 585.

The Plaintiffs in the instant case argue that this Court should invalidate the CZA on several grounds: first, because the CZA is not consistent with the City's Comprehensive Plan; second, because the CZA is not consistent with the existing and permitted uses within the original B-2 zone; and, finally, because the CZA constitutes illegal spot zoning. The Court will address each of these arguments in turn.

### A.     The CZA Is Consistent with the City's Comprehensive Plan

The Plaintiffs first argue that Avesta has the burden of showing that its proposed conditional zoning agreement "is in basic harmony with *all* provisions of the comprehensive plan." Plaintiffs' Rule 80B Brief, page 12. The law simply does not support the imposition of such a burden on a conditional zoning applicant.

> Faced with the multiple goals of protecting residential neighborhoods and promoting economic opportunity and commercial development..., the city council was not required to refrain from permitting any intrusion whatever upon an area previously zoned residential. Rather it had the job of accommodating these multiple goals in a way to advance the overall best interests of the City and its people as defined by the comprehensive plan read as a whole. The test for the court's review of the city council's rezoning action is whether "from the evidence before it the city council could have determined that the rezoning was *in basic harmony* with the comprehensive plan."

*LaBonta*, 528 A.2d at 1265 (quoting *Haines v. City of Phoenix*, 727 P.2d at 343) (emphasis added). Thus, the sole determination to be made by this Court with

4

respect to the CZA's consistency with the Comprehensive Plan is whether the two are in basic harmony, not absolute harmony.

The CZA contains the following declaration: "the Portland City Council has determined the rezoning and proposed development would provide needed housing in the City for low income individuals as is consistent with the housing component of the Comprehensive Plan, and would not negatively impact the surrounding business and residential community." Record, page 1420 (hereinafter R. ___). The Plaintiffs argue that the City erred in finding that the general goal in the Comprehensive Plan that housing be available for all persons regardless of income means that each neighborhood in the City must itself contain housing for people of all economic strata. In other words, Plaintiffs argue that "[g]eneral goals [in the Comprehensive Plan] provide no rational justification for why this particular piece of property should be rezoned to allow the construction of Florence House." Plaintiffs' Rule 80B Brief, page 16. Instead, Plaintiffs argue, the City should have read beyond the general goal of providing housing to the more specific sections of the Comprehensive Plan that require that the integrity of existing neighborhoods be considered. The Plaintiffs also point to the *Future Land Use Plan*, one of the components of the City's Comprehensive Plan, which describes the B-2 Zone (in which the property is located) as primarily commercial and which states that no changes to the zone are anticipated. Thus, the Plaintiffs conclude, the CZA is not consistent with the Comprehensive Plan because the Comprehensive Plan indicates that residential goals "are to be achieved through development in other parts of the City," not in the B-2 Zone. Plaintiffs' Rule 80B Brief, page 22. Finally, emergency shelters like the one to be part of Florence House are currently permitted only in the B-3 Zone

5

and the Plaintiffs argue that nothing in the Comprehensive Plan indicates that such a shelter should be built in the B-2 Zone in which the property lies.

The Comprehensive Plan contains a number of goals and policy statements that are not necessarily compatible in all instances. This is why the Law Court has stated that comprehensive plans are to be read "as a whole." *See, e.g., LaBonta*, 528 A.2d at 1265. Thus, the fact that the City of Portland's Comprehensive Plan sets forth goals of both maintaining neighborhood integrity and increasing housing opportunities for people of all income levels is not fatal to the CZA. When taken as a whole, it is clear that the CZA and Florence House are in basic harmony with the Comprehensive Plan.

For example, the Comprehensive Plan calls for the maximization of housing where "public infrastructure and amenities, such as schools, parks, public/alternative transportation, sewer lines, and roads, exist." R. 1599. The evidence before the City Council shows that the location of the property is on a transportation corridor and in a mixed-use area that provides several amenities. R. 1412. The Comprehensive Plan also calls for "varied and affordable" housing "to accommodate Portland's socially and economically diverse population." R. 1621. The City Council considered evidence that the YWCA had recently closed in determining that there is a particular need for the type of housing that Florence House would provide. R. 1387, 1390, 1393. The Comprehensive Plan also calls for "a continuum of housing...available for people with special needs and circumstances ranging from emergency shelters and transitional housing to permanent housing..., which offer appropriate supportive services." R. 1623. It is clear that Florence House would provide such housing and supportive services.

6

The Plaintiffs' arguments with respect to the alleged inconsistencies between the CZA and the Comprehensive Plan are unpersuasive. The B-2 Zone in which the property lies is a mixed-use zone that permits both commercial and residential properties. Thus, the CZA does not intrude on the integrity of the neighborhood.[1] Nor is it sufficient for the Plaintiffs to argue that the City should seek to accomplish its residential goals (including providing more affordable housing) in other parts of the City. The B-2 Zone is a mixed-use zone that permits residential properties. Moreover, the Comprehensive Plan does not expressly limit its residential goals to certain areas within the City.

Finally, the fact that emergency shelters are presently permitted only in the B-3 Zone without any express authorization for them in the B-2 Zone is not sufficient to find that the CZA is inconsistent with the Comprehensive Plan. As set forth *supra*, the Comprehensive Plan sets forth the goal of increased housing in Portland for all people. The Comprehensive Plan does not require the City Council to find that the property is the best or only location on which Florence House could be built in the City. The City Council is merely required to find that the CZA is consistent with the Comprehensive Plan, which it did. Moreover, the Law Court has stated that "[t]he absence of language expressly allowing [a certain use]…does not necessarily mean that no development is allowed…[so long as that development] is not inconsistent with the Comprehensive Plan." *City of Old Town*, 2002 ME 133, ¶ 19, 803 A.2d at 1023.

---

[1] The Court notes that the Plaintiffs' arguments with respect to the City's proposed "Neighborhood Based Planning" program are irrelevant as the Plaintiffs admit that the City has not yet implemented this program. Plaintiffs' Rule 80B Brief, page 18.

7

For all of these reasons, this Court finds that the CZA is in basic harmony with the Comprehensive Plan.

**B.    The CZA Is Consistent with the Existing and Permitted Uses within the Original Zone**

The Plaintiffs argue that the Florence House building would violate the minimum setback, open space and parking requirements applicable to other buildings in the B-2 Zone. The Plaintiffs also argue that the three uses included in Florence House (emergency shelter, "safe haven" beds and single room efficiency apartments) are not permitted uses in the B-2 Zone although the Plaintiffs concede that the "safe haven" beds and efficiency apartments are permitted in at least some circumstances. Thus, while the Plaintiffs argue that Florence House as a whole is not consistent with existing uses in the B-2 Zone, the Plaintiffs particularly argue that the three proposed uses within Florence House need not be combined and that the City "allowed Avesta's economic need for efficiency to trump all other considerations – including considerations about how combining the three uses amplifies the effects of Florence House on the neighborhood." Plaintiffs' Rule 80B Brief, page 31.

The Plaintiffs' argument that Florence House violates several provisions of the zoning laws regulating the B-2 Zone cannot be disputed; after all, there would be no need for Avesta to seek conditional zoning if its proposed Florence House project met the existing zoning requirements. As there is no question that conditional zoning is permitted both by statute and under the Portland Land Use Code, the mere fact that a proposed building does not meet the existing zoning requirements cannot be sufficient to defeat the application for a conditional zoning. Indeed, 30-A M.R.S.A. § 4352(8)(B) itself requires only that the rezoned

8

area be consistent with the existing uses in the original zone, not that it comply with every zoning regulation in the original zone.

As the Plaintiffs concede that the "safe haven" beds and efficiency apartments can "reasonably be construed as residential uses" that are currently permitted in the B-2 Zone, Plaintiffs' Rule 80B Brief, page 28, the primary issue before this Court is whether the emergency shelter is a use consistent with the present uses in the B-2 Zone. The Court answers this question in the affirmative.

The terms of the CZA require that the Florence House emergency shelter, unlike other emergency shelters in the City, remain open twenty-four hours a day. Thus, the Florence House shelter is distinguishable from nighttime only shelters that often result in queuing on the street outside. R. 734. As the City points out, this makes Florence House analogous to an apartment building or to a hotel or motel, all of which are permitted uses in the B-2 Zone. In sum, the B-2 Zone is a mixed use zone that contains both multi-unit residences and commercial properties of various sizes, including several buildings larger than the proposed Florence House that produce more activity than the proposed Florence House. For all of these reasons, the Court finds that the CZA is consistent with existing uses in the B-2 Zone.

## C.     The CZA Does Not Constitute Illegal Spot Zoning

The Plaintiffs hint strongly several times throughout their brief that the CZA constitutes illegal spot zoning. Illegal spot zoning "is the 'process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners.'" *City of Old Town*, 2002 ME 133, ¶ 20, 803 A.2d at 1024 (quoting *Vella v. Trician Marine Corp.*, 677 A.2d 1051, 1053-54 (Me. 1996)). A

determination of illegal spot zoning requires that the ordinance "(1) must pertain to a single parcel or a limited-area – ordinarily for the benefit of a particular property owner or specially interested party – and (2) must be inconsistent with the city's comprehensive plan…" *Id.* (quoting *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 39-40 (D.C. 1979)).

As set forth above, the Plaintiffs in the instant case have failed to show that the CZA is inconsistent with the City's Comprehensive Plan. As such, the CZA does not constitute illegal spot zoning. *Id.* ¶ 21, 803 A.2d at 1024 ("Because the City has failed to establish that this ordinance is inconsistent with the Comprehensive Plan, the ordinance does not constitute illegal spot zoning").

Therefore, the entry is:

The decision of the City of Portland City Council to approve the Conditional Zoning Agreement is AFFIRMED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___9th___ day of ___July_____, 2008.

_____
Robert E. Crowley
Justice, Superior Court

10.

DURWARD PARKINSON ESQ    - *remaining defs).*
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME 04043

JOHN BANNON ESQ    - *pltf*
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME 04104

PENNY LITTELL ESQ    - *City*
389 CONGRESS ST
PORTLAND ME 04101